**Richmond.**

## ALEXANDRIA & F. R. R. CO. v. HERNDON.

### December 4th, 1890.

1. PRACTICE AT COMMON LAW.—*Declaration— Variance—Amendments.*— At trial, in case of variance between declaration and evidence, the court may allow the former to be amended by striking out immaterial words without remanding case to rules.   Code, sec. 3384.

2. NEGLIGENT INJURIES— *Unusual stopping-place—Evidence.*—Testimony as to what had been the stopping-place at that station is admissible in an action for personal injuries, when defendant contends that plaintiff was injured whilst alighting from its train before it reached its usual stopping-place, while in motion, and the plaintiff denies such contention.

3. IDEM—*Instructions—Case at bar.*—The accident occurred at night, during a snow storm.   It was intensely dark, and the platforms of the cars were covered with snow.   Plaintiff, a female, was unattended and encumbered with heavy clothing and packages.   There was no platform at the station, and defendant's servants offered her no assistance.   The court instructed the jury that if there was no platform or other proper landing at the stopping-place, and defendant's servants rendered plaintiff no assistance, and if, for want of such landing and assistance, plaintiff was injured, without fault on her part, she should recover; *held*, no error.

4. IDEM— *Case at bar.*—There being evidence before the jury that there were no lights at the stopping-place, and the court charged that if the accident was caused by the defendant company's failing to light the place, it was liable for damages; *held*, no error.

Error to judgment of circuit court of county of Prince William, rendered May 14th, 1889, in an action of trespass on the case, wherein Irene A. Herndon, an infant under

twenty-one years of age, by her next friend, Kendrick E. Herndon, was plaintiff, and the Alexandria and Fredericksburg Railroad Company was defendant. The object of the suit was to recover damages for injuries alleged to have been inflicted upon the plaintiff through the negligence of the defendant.

The facts, as they appear by the certificate of the trial judge, are as follows: The plaintiff was, on the 17th day of December, 1887, a passenger on one of the defendant's trains from Washington city to Quantico, in Virginia. The train left Washington at 4:55 P. M., and reached Quantico at 6:05 P. M. of the same evening. As the train approached Quantico, the name of the station was announced by a brakeman, Skidmore, who opened the front door of the rear car, and then turned and opened that of the next car in front, leaving both doors open. He then resumed his position on the intermediate platform, and remained there until Quantico was reached, when he descended to the ground and stood at the foot of the steps of the front platform of the rear car, with lighted lamp in hand, to assist passengers leaving the car. The conductor was at the front end of the smoking car, in the discharge of his duty, his presence there being required by the boisterous conduct of three drunken negro passengers. The evidence was conflicting as to the position of the rear brakeman, Evans, the plaintiff testifying that he was sitting, asleep, near the rear end of the rear car, in which she was riding, with his lantern sitting on the floor near him, as she passed by on her way out of the rear car, and the brakeman denying that he was asleep, and protesting that he did not see her go past him.

After the approach to Quantico was announced, the train did not stop until that station was reached, when it did stop and remain five minutes, ample time for all passengers wishing to leave the train to do so. After the train stopped at Quantico, the plaintiff, Irene Herndon, was found in the ditch

by the side of the railroad track, at a point 133 feet north of the depot. The ditch had sloping sides and was, at its lowest depression, twenty-two inches from the lower step of the car. The evidence was conflicting as to the position of the train after it stopped, and as to its length. The plaintiff fell from the train; but the evidence was conflicting as to whether the train was in motion or standing at the time she fell; she testifying that it was then standing. She was riding in the rear car when the train approached Quantico, and it was from the rear platform, or steps, of that car that she fell in attempting to leave the train. By the fall she was rendered unconscious, and remained so until she was discovered. She was assisted to the depot, and she walked thence a half mile to the house of Mr. Bladen, a railroad employee, where she remained and was cared for until the next day, when she was sent for and removed, in an open sleigh, to her father's home, in Stafford county, ten miles distant from Quantico.

The cars were in good condition; the rear car, in which the plaintiff was riding, being new. There was a platform at each end of each car, with an iron hand-rail on each side of the steps, which were three in number, each step being ten inches, except the lower step, which was twenty-two inches from the ground. The cars and the rooms in the depot were lighted. Between the depot and the point where the plaintiff was discovered after her fall, a street about sixteen feet wide crosses the railroad, at right angles, and there was a plank walk, about three or four feet wide, extending along this street eastwardly towards the Potomac river. The depot is not owned, but is used by the defendant. There is no platform there, but from the depot along the railroad there is a level side-walk some three or four feet wide, extending to the plank side-walk. A person alighting from either the front or rear platform of the rear car, in the position it was described as occupying, by Bladen, the defendant's witness, on the occasion in question, after the train became stationary, would alight on level ground

and be able to reach the depot by passing along the side-walk. But as to the true position of the train, or the rear end of the rear car thereof, the evidence is also conflicting. At the time of the accident, the plaintiff had on an unusual quantity of clothing, and an overcoat or cloak of thick black cloth reaching to or near her feet, and a small satchel and picture in her hands. By the fall the plaintiff, besides being severely bruised about her face, sustained a fracture of the superior maxillary bone, and the loss of seven teeth, and such impairment of vision that she cannot read or sew at night, or on cloudy days, resulting, in the opinion of her physician, from the shock to her nervous system, and from which, in his opinion, she will never recover.

On the occasion of the accident there were no stationary lights at the depot. No assistance was rendered the plaintiff in alighting from the train. The night was intensely dark. There had been a heavy fall of snow during the day, and when the train reached Quantico snow was still falling, but not so rapidly.

The trial judge certified that the foregoing were all the facts proved, but in addition also certified the evidence.

At the October term, 1888, of said circuit court, the defendant demurred to the declaration and the court sustained the demurrer, but, without remanding the case to rules, allowed the declaration to be amended at bar by expunging certain immaterial words. But the case was continued until the May term, 1889, when it was tried. At the trial the court, at the instance of the plaintiff, gave to the jury two instructions, to which the defendant objected.

1. "The court instructs the jury that if they believe from the evidence that at the time of the plaintiff's being injured there was no platform or other proper landing place at the train's stopping place at Quantico, and the defendant's servants did not assist the plaintiff to alight, and, for want of such platform or landing place and assistance in alighting,

the plaintiff was injured, without fault on her part, then the jury must find for the plaintiff."

2. "The court further instructs the jury that if they believe from the evidence the night on which the plaintiff was injured was intensely dark, and the vision of the plaintiff was further obstructed by a fierce snow storm that was raging at the time, and that the defendant failed to light the station or stopping place at Quantico, and that in consequence of the defendant's failure to so light the station or stopping place at Quantico the plaintiff, in attempting to alight from defendant's train, fell and was injured, without fault on her part, then the jury must find for the plaintiff."

At the trial, also, the plaintiff, having introduced evidence tending to prove that she was, on the 17th of December, 1887, a passenger on a train of the defendant company, to be transported from Washington city to Quantico, and that she had sustained injury at the last named place owing to the neglect and default of the defendant, offered to prove the place at which it was customary for the defendant to stop its trains before the accident in question; to which the defendant objected, but the court overruled the objection and allowed the evidence to be introduced.

The jury found for the plaintiff and assessed her damages at $5,000, whereupon the defendant moved the court to set aside the verdict as contrary to the law and the evidence, and to grant a new trial; but the court refused the motion and gave judgment according to the finding of the jury, and the defendant excepted to this ruling as it had already done to the previous rulings referred to.

The case is brought here by the said railroad company on writ of error and *supersedeas* to said judgment of the circuit court.

*F. L. Smith*, for the plaintiff in error.

*E. E. Meredith*, and *E. E. Nichols*, for the defendant in error.

RICHARDSON, J. (after stating the case) delivered the opinion of the court.

On behalf of the plaintiff in error several objections are taken and relied upon as grounds for the reversal of the judgment of the circuit court.

1st. The first assignment is, that the court below erred in refusing to remand the case to rules, and in allowing the plaintiff to amend at bar after sustaining the defendant's demurrer to the plaintiff's declaration. We fail to perceive any cause of reversal in the action of·the court in this respect. Had the amendment been of such a nature as to render necessary some change in the defence, and a trial had been forced upon the defendant at the same time at which the amendment was allowed, then there would have been ground of complaint. But the amendment consisted merely in striking out of the declaration certain superfluous and immaterial words; and, moreover, the trial was delayed until the succeeding term.

It is not only common, but commendable practice, for trial courts to allow amendments in the pleadings at bar without putting the party to the unnecessary trouble and expense of going back to rules, provided the other party is not put to the disadvantage of being forced into trial on new and deferent issues. Moreover, we have statutory provisions allowing amendments to be made, both before and at the trial, and without imposing the necessity of going back to rules. Code 1887, §§ 3253, 3263, and 3384. The last named section provides that, "If, at the trial of any action, there appears to be any variance between the evidence and allegations, or recitals, the court, if it consider that substantial justice will be promoted, and that the opposite party cannot be prejudiced thereby, may allow the pleadings to be amended on such terms as to the payment of costs, or postponement of the trial, or both, as it may deem reasonable." The amendment in the present case, if not within the letter, is certainly within the spirit of

this provision of the statute. And the decisions of this court have been in accord with such liberal policy.

2d. The second assignment is, that the circuit court erred in allowing the plaintiff, the defendant in error here, to offer evidence tending to show where, prior to December 17th, 1887, the date of the accident, it had been customary for the defendant, the plaintiff in error here, to stop its trains on arriving at Quantico. This objection cannot be maintained. It is a settled rule of evidence, that whatever tends to prove the issue, or constitutes a link in the chain of proof, is relevant and admissible. 1 Greenleaf on Ev., § 51a. From the examination of its own witnesses, and the cross-examination of the plaintiff's witnesses, the obvious theory of the defendant company, at the trial, was that the plaintiff fell and received her injuries by reason of her attempting to alight from the train before its arrival at the customary stopping place, and while it was still in motion; while the theory of the plaintiff was that the train had arrived at the theretofore customary stopping place, and was standing when she attempted to leave it and was injured. It is, therefore, clear that testimony to the effect that the company's trains theretofore had habitually stopped at a particular place, did tend to prove the issue, and was admissible. In other words, such testimony certainly tended to create some ground of presumption that, on the night of the accident, the train was stopped at the point where the plaintiff fell and was injured, and that it was standing at the time, and was not in motion, though, of course, any mere presumption, thus founded, would necessarily have to yield to positive evidence to the contrary. In recognition of this rule, this court held in *Brighthope Railway Co.*, v. *Rogers*, 76 Va., 463, that testimony "is admissible to prove that the locomotive that fired Rogers' woods, had, on other occasions, emitted sparks and set fire to property along the railway in order to show negligence on the part of the company."

3d. The third assignment is, that the circuit court erred in

giving the two instructions set forth in the statement of case. It is not necessary to repeat them, and they will be now considered in the order in which they were given. As to the first instruction, can it be doubted that a carrier of passengers is under obligation to provide platforms or other safe conveniences for passengers to alight on at their stations, and to deliver passengers safely thereon. We think not. There is abundant authority for the proposition, that if there be no platform at the train's usual stopping place, the railway company is negligent; and if its servants do not assist passengers to alight, and if for want of such assistance a passenger in alighting be injured, without fault on his part, the company is liable to him in damages therefor. Patterson's Railway Accident Law, § 257; Sh. & Rad. on Neg., § 275; Angell's Law Carriers, 433; *Memphis and Charleston R. R. Co.*, v. *Whitfield*, 44 Miss., 486–488. And the care and attention which the carrier is bound to use in assisting passengers to alight from his train depends upon the necessity which they are under for assistance; as, for instance, where the passenger is aged and decrepit, or a child, or a female unattended and helpless. In the present case the railway company was called upon by every consideration of duty and humanity to exercise the highest degree of vigilant care for the safety of the passengers. A fine snow storm was raging; the platforms of the cars and the steps leading therefrom were necessarily covered with snow and rendered dangerous, especially to an unattended female passenger encumbered as was this one. Yet she received no assistance, no attention whatever, and was permitted to walk forth into the blinding storm, and to encounter all the perils of the situation, her knowledge of which, and her capacity to avoid them, were almost as nothing compared to those of the company's servants who were present and charged with the duty, but did nothing to aid her in her position of peril.

In the very instructive case of *McDonald* v. *Chicago, &c., R. R. Co.*, 26 Iowa, 124, a case presenting some of the prominent

features of the case at bar, C. J. Dillon laid down the following rule as applicable to all cases of injury about stations and in entering cars: "Railway companies are bound to keep in a safe condition all portions of their platforms and approaches thereto, to which the public do or would naturally resort, and all portions of their station-grounds reasonably near to the platforms, where passengers, or those who have purchased tickets with a view to take passage on their cars, would naturally or ordinarily be likely to go." In that case the plaintiff in company with her husband purchased a ticket at Cedar Rapids, upon the defendant's line of railway, to Fulton, Illinois. In attempting to get aboard the train some twenty minutes before it was time for it to leave, and at a point some distance from the usual place, she stepped upon the end of a plank in the platform which, being loose and out of place at one end, gave way and let her down upon the track head-foremost under the train, breaking her leg and otherwise injuring her. It was so dark that the plaintiff could not see the condition of the plank. The defendants showed that the point at which the injury happened was some three hundred feet from the station, and that the usual place for passengers to get on and off the train was at a point immed'ately in front of the station. It was also shown by the defendant, that it was customary when the train arrived from the west, as in that instance, to run back so as to bring the baggage and express cars to a point opposite the freight depot for the purpose of discharging and receiving baggage and express matter. This movement, on the occasion of the accident, placed the passenger coaches west of the west end of the platform, so that the nearest passenger car was about one car length beyond the steps at the west end of the platform. It was while the cars were thus standing that the plaintiff, without waiting for them to be drawn up to the platform in front of the passenger depot, started for them, walking the whole length of the platform, and in descending the steps received the injury for which the

action was brought. The defendant also produced evidence to the effect that there was plenty of room to get on and off the train from the platform; that there was no necessity for any one to go down the steps, where the accident occurred, to get on the train; that before leaving, all trains drew up in front of the passenger depot and stopped to take on passengers; that said steps were not intended or used for passengers to get on the trains, and that the accident happened fifteen or twenty minutes before the leaving time of the train. In that case, the defendant asked the court to instruct the jury as follows:

1st. " If the jury believe from the evidence that the defendant, at the time of the alleged injury at the station at Cedar Rapids, was provided with a safe and suitable platform in front of and adjacent to the passenger-rooms of said station, so that passengers could safely and conveniently pass from said room to the train, and that passenger trains stopped at said platform for the purpose of receiving passengers, and if said plaintiff, in attempting to get upon said train by a different and unusual way and at a different and unusual place, met with said accident, then the plaintiff is not entitled to recover in this action.

2d. " That if the plaintiff, Margaret McDonald, attempted to enter the train at a place not prepared or designed by the defendant for receiving passengers on trains, there being no paramount necessity for so doing, and in making such attempt she received the said injury, then her own fault contributed to the same, and the plaintiff cannot recover.

3d. " The liability of the defendant as a common carrier did not commence as to the plaintiff until the train which they were to take was drawn up at the usual place for receiving passengers; unless they were directed by some authorized agent of defendant to go upon the train at another and different place, or before the train reached the usual place."

Each of these instructions was refused by the trial court,

and the defendant excepted.   The court, after referring to the issues made by the pleadings, charged the jury as follows:

"The principal question for you to determine is, by whose fault or negligence did the accident occur?   If one of the steps was loose and not nailed down, by reason of which the accident happened, it is such a want of care as would render the defendant liable, unless you find that the accident happened, or was contributed to by the want of ordinary care and prudence on the part of the plaintiff.   It is for you to determine from the evidence whether the plaintiff used ordinary care and prudence in leaving the depot and going to the cars by the way and at the time she did; and by ordinary care is meant such care and prudence as an ordinarily prudent person would exercise under like circumstances.   If you find that an ordinarily prudent person would not have gone down the steps of the platform where the accident occurred, but would have waited until the passenger cars were opposite the passenger depot, then the defendant is not liable.   And if you find that the plaintiff went by a way which was not used or traveled over by passengers to enter the cars, and that a person of ordinary prudence would not have gone by that way, you may fairly infer that there was a want of ordinary care on her part.   Passengers must exercise ordinary care in approaching and entering the cars.   If, however, you find that the defendant backed its train up to the place where it stood when the accident happened; that persons could conveniently and safely approach the train where it then stood, but for the defective step, and there was no rule or regulation of the company prohibiting persons from approaching the cars by that way, and that an ordinarily prudent person would have approached the train by that way, the defendant is liable, if the accident occurred by reason of the defective step."   To this charge the defendant company excepted, but it was on appeal fully sustained.

This Iowa case well illustrates the propriety of the instruc-

tion under consideration, the first of the two instructions given in the present case, as well as the correctness of the finding therein. The rule laid down by C. J. Dillon recognizes it to be the duty of railway companies not only to have at their stations safe and convenient platforms for the use of passengers, but the duty also to keep all portions thereof, and all approaches thereto, to which the public do or would naturally resort, as well as all portions of their station grounds reasonably near to the platforms, in good repair.

In the present case, there was no platform at the station, and the company's servants rendered the defendant in error no assistance in her attempt to alight from the train. It cannot, therefore, be said that the circuit court erred in instructing the jury "that if they believe from the evidence that at the time of the plaintiff's being injured there was no platform or other proper landing place at the train's stopping place at Quantico, and the defendant's servants did not assist the plaintiff to alight, and, for want of such assistance or landing place, and assistance in alighting, the plaintiff was injured, without fault on her part, then the jury must find for the plaintiff."

As to the second instruction, we are of opinion that there was evidence upon which to found it, and that the proposition of law therein contained, as to the neglect to light stations and platforms, is supported by abundant authority. In *Reed* v. *Axtell and Myers, Receivers,* 84 Va., p. 238, this court said: "The law undoubtedly imposes upon a railroad company the duty of keeping its stations and premises in such safe condition as that the passengers, in the exercise of ordinary care, can get upon or leave the same, or go wherever they are expressly or impliedly invited to go, without injury; and this embraces suitable steps and platforms, as well as suitable lights." *Kup* v. *Boston & Albany R. R. Co.,* 142 Mass., 251; 2 Wood's Railway Law, § 310, and cases cited. See also *Richmond & Danville R. R. Co.* v. *Morris,* 31 Gratt., at p. 207, where this court, per Burks, J., after having stated that the conductor should have

cautioned the passenger not to attempt to get off until the train stopped, said: "The company was also in fault in not having stationary lights.   *   *   *   *   And this defect made it all the more incumbent on the conductor to exercise more than usual care and caution in letting off passengers." This language is peculiarly appropriate in the present case, where an unattended and encumbered female passenger was permitted to go forth from the train wholly unaided, and to grope her way in the midst of a fierce storm and intense darkness.

The position of the plaintiff in error that the appointments at country stations are not required to be so safe and so well adapted to guard the lives and security of persons as those in cities, has not the sanction of law, reason, or justice.

4th. The fourth and last assignment of error is the refusal of the court to set aside the verdict of the jury and award a new trial.   As already stated, there is in this case the unusual feature of a certificate of the evidence as well as a certificate of the facts proved.   There can be no question that the certificate of facts is paramount, the rule which prevails in this court being that what the trial judge has certified to be the facts proved in the trial court are to be accepted by this court as final and conclusive, unless manifestly erroneous.   Here, however, whether the facts certified or the evidence certified be considered, the result will be the same; for when, under § 3484, Code 1887, the rules governing a demurrer to evidence are applied, and all the parol evidence of the plaintiff in error that is in conflict with the evidence of the defendant in error, has been discarded, and full faith and credit is given to the evidence advanced by the defendant in error, as well as to all inferences that are fairly deducible therefrom, there can remain no question whatever, that the refusal of the court below to set aside the verdict and grant a new trial, was correct, and that the judgment complained of is right and must be affirmed.

JUDGMENT AFFIRMED.