# Wytheville

## Southern Railway Company v. Rice's Administratrix.

### June 12, 1913.

1. Master and Servant—*Death of Servant—Violating Speed Ordinance—Negligence—Railroads.*—An engineman of a railway company cannot recover damages from his employer for injuries suffered while running his engine within the limits of a city at a higher rate of speed than that fixed by the ordinance, if such negligence proximately contributed to the injury, and it is immaterial that the company knew that the ordinance was regularly violated by its employees. The negligence in such case is negligence as a matter of law, and it would be contrary to public policy to relieve the engineman of the effect of his violation of law upon the ground that the company and its employees were in the habit of violating the particular law.

2. Evidence—*Contributory Negligence—Pleading.*—In an action on the case the defendant may, under the plea of not guilty accompanied by the ground of defense that the plaintiff was guilty of contributory negligence, introduce any evidence which shows that the plaintiff was guilty of contributory negligence *per se.* or, being relevant, tends along with other facts and circumstances to show his contributory negligence.

3. Instructions—*Sufficiently Instructed—Harmless Error.*—A party is not prejudiced by the refusal of the court to give a correct instruction where, after reading other instructions to the jury, the court states the law to the jury substantially as requested in the rejected instruction.

4. Evidence — *Speed Ordinances — Violation — General Reputation.* — Where an engineman was killed while violating a speed ordinance, it is generally not permissible for his employer to introduce evidence tending to show that the decedent had the reputation among his fellow-employees as a fast runner, and had previous to the accident in which he was killed and at the same point disregarded the speed ordinance.

5. Evidence—*Speed Ordinances—Violation—General Reputation.*—In an action to recover for the death of an engineman killed while violating a speed ordinance where the uncontradicted evidence

shows that at the time he was killed he was running his engine in the city limits at a speed of from twelve to fifteen miles an hour, whereas the maximum limit fixed by the city ordinance was only four miles an hour, evidence is not admissible which tends to show that he had the reputation of being a fast runner and had previously violated the ordinance.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The following instructions were given by the court:

1. The court instructs the jury that if they believe from the evidence that at the time of the accident mentioned in the declaration and evidence the decedent, Jas. G. Rice, was employed as a locomotive engineer by the defendant company, and was performing his duties as such locomotive engineer, as set forth in the declaration, then the defendant company owed him the duty of exercising ordinary care to provide, and by supervision and inspection to maintain, a reasonably safe railroad track and roadbed, and reasonably safe rail joints and appliances in connection therewith, as were reasonably necessary to render the said railroad track reasonably safe for the use of the said Jas. G. Rice while performing his duties as such locomotive engineer. And whether the defendant company did, at the time in question, provide and so maintain such a reasonably safe track and rail joints as an ordinary prudent person would have done, under the circumstances, for the use of said Jas. G. Rice while so engaged in the performance of his duties, is a question of fact for the determination of the jury, from the evidence before them in this case.

Ordinary care is such care as persons of ordinary prudence would exercise under similar circumstances. And

if the jury believe from the evidence that by reason of the failure of the defendant company to exercise such care the track of the defendant and joints of the rails in and near 14th street in the city of Richmond, mentioned in the evidence, became unsafe and caused the derailment mentioned in the evidence, and thereby the death of Jas. G. Rice was occasioned while he was in the exercise of such reasonable care as a prudent person would exercise under the same circumstances, then they should find for the plaintiff.

2. The court instructs the jury that knowledge by any railroad employee injured by the defective or unsafe character or condition of any railroad machinery, ways, appliances or structures shall be no defense to an action for injury caused thereby; and if the jury believe from the evidence that James G. Rice was injured by reason of the fact that the condition or character of the defendant company's machinery, ways, appliances or structures were not reasonably safe, viz.: that the track and roadbed in question crossing 14th street were out of repair or were improperly constructed, and were thereby rendered unreasonably unsafe to said Rice in the performance of his duties as engineer, and if they believe that the deceased, Rice, was attending to his accustomed duties, using such care as a man of ordinary prudence would use under the circumstances therein at the time he received the injury which caused his death, they must find for the plaintiff, notwithstanding they may believe from the evidence that he had knowledge of the unsafe condition or character of the said track and roadbed.

3. The court instructs the jury that the defendant was not the insurer of the plaintiff's intestate, and was not bound to provide the best and safest machinery, ways, appliances or structures, and if in the exercise of ordinary care it provided such as were reasonably safe for operating

its trains at a reasonable and proper rate of speed, it discharged its full duty to the plaintiff's intestate, even though the jury shall further believe that safer machinery, ways, appliances or structures might have been employed.

4. The court instructs the jury that if they believe from the evidence that the tracks of the defendant company at the place of the accident were in a reasonably safe condition, they must find for the defendant.

5. The court instructs the jury that the burden is upon the plaintiff to show by a preponderance of the evidence that the death of Jas. G. Rice was due to the negligence of the defendant, its servants or agents, as alleged in the declaration, and the jury is instructed that if they believe from the evidence that his death may have resulted from one of two causes, for one of which defendant is responsible, but not for the other, the plaintiff cannot recover, nor can plaintiff recover if the jury believe from the evidence that it is just as probable that the death of the plaintiff's intestate was caused by the one as by the other.

6. The court instructs the jury that if they believe from the evidence that the accident to the plaintiff was caused by a piece or stick of wood falling upon the track of the defendant, and if the jury further believe from the evidence that the defendant's road at the place of accident had been inspected in the manner ordinarily in use by prudently conducted roads under like circumstances without discovering said piece or stick of wood, they must find for the defendant.

7. The court instructs the jury that if they believe from the evidence that an ordinance of the city of Richmond required engines at the place of the derailment to be propelled at no greater rate of speed than four miles an hour, and if the jury further believe from the evidence that at the time of the derailment the plaintiff's intestate was running the train at a greater rate of speed than four miles

an hour, and if the jury further believe that the speed at which the train was being moved was negligent and in any way contributed to cause the derailment, the jury must find for the defendant.

8. If the jury believe from the evidence that the plaintiff should recover damages from the defendant company, then in ascertaining the amount of the damages, which shall not exceed ten thousand dollars ($10,000), they may consider:

(1) The pecuniary loss sustained by the widow and the children of Jas. G. Rice by his death, fixing the same at such sum as would be equal to the probable earnings of the said Rice, taking into consideration the age, business capacity, experience, habits, health, energy and perseverance of the deceased, during what would probably have been his lifetime, had he not been killed.

(2) In ascertaining the probability of life, the jury have the right to determine the same with reference to recognized scientific tables relating to the expectation of human life.

(3) By adding thereto compensation for the loss of his care, attention and society to his wife and children.

(4) By adding such further sum as they may deem fair and just by way of solace and comfort to said wife and children for the sorrow, suffering and mental anguish occasioned to them by his death.

And the jury may direct in what portion any damages they assess shall be distributed to the wife and children of the deceased.

The foregoing are all instructions of the court and must be considered and construed together and in the light of each other.

In addition to the foregoing instructions which were read to the jury, the court stated to the jury that the court was the judge of the law as applied to this case, and they

were the judges of the facts and the weight of the testimony.

Of the said instructions, Nos. 1, 2 and 8 were instructions asked for by the plaintiff. Nos. 4, 5 and 6 were instructions asked by the defendant, and Nos. 3 and 7 were modifications or changes of instructions asked by the defendant. To giving of said instructions Nos. 1, 2 and 8 as asked for by the plaintiff, and the giving of instructions Nos. 3 and 7 in lieu of instructions asked for by the defendant, the defendant excepted.

Instructions tendered by the defendant, but rejected:

A. The court instructs the jury that if they believe from the evidence that the tracks of the defendant and its engines were in a reasonably safe condition upon and with which to operate a train at a legal and proper rate of speed, and if they further believe that the plaintiff's intestate was operating the train at a rate of speed prohibited by an ordinance of the city of Richmond, and that the speed at which the train was being moved directly contributed to cause the derailment, the jury must find for the defendant.

B. The court instructs the jury that Engineer Rice had no legal right to run his engine over the street at a greater rate of speed than four miles an hour, and if they believe from the evidence that Engineer Rice at the time of the derailment which resulted in his death was going faster than four miles an hour, and that such speed contributed to the accident, they must find for the defendant.

C. The court instructs the jury that while they are the judges of the facts, the court is the judge of the law, and it is the duty of the jury to accept and act upon the law as stated in the instructions, they applying the facts as they may determine them thereto.

D. The court instructs the jury that if they believe from

the evidence that an ordinance of the city of Richmond required engines at the place of derailment to be propelled at no greater rate of speed than four miles an hour, and if the jury further believe from the evidence that at the time of the derailment plaintiff's intestate was running the train at a greater rate of speed than four miles an hour, the jury must find for the defendant.

E. The court instructs the jury that knowledge of the plaintiff's intestate of the defective or unsafe character or condition of any machinery, ways, appliances or structures of the defendant will not of itself be a bar to a recovery, but such knowledge may be considered in determining whether the plaintiff's intestate was guilty of contributory negligence if the jury believe from the evidence that the machinery, ways, appliances or structures of defendant were reasonably safe for the operation of the train at a legal and proper rate of speed, and if they further believe from the evidence that an ordinance of the city of Richmond required trains at the place of the accident to be propelled at no greater rate of speed than four miles an hour, and if they further believe from the evidence that at the time of the accident the train was being operated by the plaintiff's intestate at a greater rate of speed than four miles an hour, and that the speed with which the train was being moved directly contributed to cause the derailment, then the plaintiff's intestate was guilty of contributory negligence, and the jury must find for the defendant.

The opinion states the case.

*Munford, Hunton, Williams & Anderson,* for the plaintiff in error.

*Hunsdon Cary* and *Wm. Crump Tucker,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action to recover damages for the alleged negligence of the Southern Railway Company, which resulted in the death of the plaintiff's intestate, James G. Rice.

The decedent was an 'engineman of the railway company in charge of one of its yard engines. His death was caused by the derailment and overturning of his engine at or near Fourteenth street, in the city of Richmond. Conceding that the evidence is sufficient to show that the defendant company was guilty of negligence in the construction and maintenance of its track where the engine was derailed, there was evidence tending to show that the deceased, when operating his train at the time he was injured, was violating a speed ordinance of the city of Richmond, and that if he had been operating his engine within the speed limit there would have been no accident and he would have suffered no injury, notwithstanding the condition of the track.

The speed limit fixed by the ordinance for engines, etc., on a railroad track in a street was not to be in excess of four miles an hour, and any one who propelled it at a greater rate of speed or caused it to be done, or assisted in doing it or causing it to be done, was subject to a fine of ten dollars.

There was evidence that the engine operated by the plaintiff's decedent was moving, with fifteen loaded and five empty cars, from the eastern end of the city over or across Fourteenth street, on a slight up-grade, on its way to Manchester; that just before reaching the line of Fourteenth street, or while in the street, the engine was derailed, passed over the street, over the sidewalk, into the yard on the west side of the street, over or across a side track, thence to another side track on which was stand-

ing a box car, with which the engine collided and was overturned. The injuries causing the death of the plaintiff's intestate were from escaping steam, resulting from the overturning of the engine. The evidence further tended to show that the distance which the engine moved after it was derailed, before it collided with the box car, was some 130 feet or more, and that if the engine had been running within the speed limit it would not have gone, after it was derailed, with its train anything like that distance.

The principal question involved in this writ of error is as to giving and refusing instructions.

The contention of the defendant company is and was that the plaintiff was not entitled to recover if it appeared from the evidence that at the time her decedent was injured he was operating his engine in violation of the speed ordinance of the city, and that the excessive speed at which he was running his engine contributed to his injury. The plaintiff, on the other hand, insisted and insists that such violation of the ordinance did not bar her recovery unless the jury believed from the evidence that the plaintiff's intestate was operating his engine at a negligent rate of speed, and, if so, that such negligence contributed to his injury. In other words, the question involved is whether the violation of the ordinance, such violation contributing to the plaintiff's intestate's injury, amounted as a matter of law to contributory negligence, or was merely evidence tending to show contributory negligence.

The railway company insists that the case of *Reiger* v. *Atlantic & Danville R. Co.,* 95 Va. 418, 28 S. E. 590, and the cases in which it has been followed, sustain the railway company's contention; while, on the other hand, the plaintiff claims that the case of *Chesapeake & Ohio Ry Co.* v. *Jennings,* 98 Va. 70, 34 S. E. 986, directly, and certain other of our cases indirectly, sustain her contention.

Without reviewing the cases relied on by either the plaintiff or defendant or attempting to harmonize the real or apparent conflict between them, if any, we will consider the question involved here as one of first impression in this State, since none of the cases relied on by either side present the question of the right of an engineman to recover damages from his employer for injuries suffered when running his engine in violation of a city ordinance and such violation directly contributed to his injury.

The text-books seem to be agreed that the general rule is that if the person injured was at the time he received the injury doing some act in violation of a statute or ordinance, he cannot recover, if such violation contributed to his injury.

Shearman & Redfield, in their work on Negligence, Vol. 1, sec. 104 (5th ed.), lay it down as the general rule that "if the plaintiff is acting in violation of a statute or ordinance at the time the accident occurred, and such violation proximately contributes to his injury, he is guilty of contributory negligence. But if such violation does not contribute to the injury, it is no defense."

Labatt on Master & Servant, sec. 362, says: "There can be no question that where a servant's injury was proximately caused by the fact that he was violating a statutory or municipal ordinance, the meaning and effect of which are perfectly clear, he cannot recover damages."

In Cooley on Torts (3rd ed.), Vol. 1, pp. 273-4, it is said that the fact that a party injured was at the time violating the law does not put him out of the protection of the law—he is never put by the law at the mercy of others. If he is negligently injured on the highway, he may have redress, notwithstanding at the time he was upon the wrong side of the road, provided that act did not contribute to his injury.

Twenty-nine Cyc. 525, in stating the general rule, says

that "if the person injured was at the time of receiving the
injury doing some act in violation of a statute or ordinance,
such person cannot recover if such violation contributed to
the injury, the violation amounting to contributory negli-
gence."

In 7 Am. & Eng. Enc. Law (2nd ed.), the general rule
is stated as follows: "It is not contributory negligence
*per se* for the injured person at the time of his injury
to be engaged in a violation of law, either positive or nega-
tive in its character. Before an illegal act or omission can
be held contributory negligence, it must appear that such
act or omission was a proximate cause of the injury. It
is usually held that the mere collateral wrong-doing of the
plaintiff cannot of itself bar him of his action when it
did not proximately contribute to his injury." Thompson
on Neg. (2nd ed.), sec. 11; Beech on Contributory Neg.,
sec. 47; 4 Dillon Mun. Corp. note, p. 3004, cases.

The general rule as laid down by the text-writers quoted
and by others which might be cited seems to be fully sus-
tained by reason and authority.

The reason why no recovery is permitted in such a case
is based upon grounds of public policy. That principle
of public policy is this (as stated by Lora Mansfield in
*Holmes* v. *Johnson,* and quoted with approval in *Roller* v.
*Murray,* 112 Va. 780, 783-4, 72 S. E. 665, 38 L. R. A. [N.
S.] 1202)—*"ex dolo malo non oritur actio*—no court will
lend its aid to a man who founds his cause of action upon
an immoral or an illegal act, if from the plaintiff's own
stating or otherwise the cause of action appears to arise
*ex turpi causa,* or the transgressions of a positive law of
this country, there the court says he has no right to be as-
sisted. It is upon that ground that the court goes; not for
the sake of the defendant, but because they will not lend
their aid to such a plaintiff."

While this rule finds its application more frequently

in actions upon illegal contracts, it applies to cases in tort. It is immaterial, as was said by Judge Gray in *Hall* v. *Corcoran,* 107 Mass. 251, 253 (9 Am. Rep. 30), "whether the form of the action is in contract or in tort; the test in each case is whether, when all the facts are disclosed, the action appears to be founded in a violation of law, in which the plaintiff has taken part." See also 1 Am. & Eng. Enc. Law & Pr. 1024; 38 Cyc. 529-30, and cases cited in the notes to each; *Newcomb* v. *Boston Protection Dept., &c.,* 146 Mass. 596, 602, 16 N. E. 555, 4 Am. St. Rep. 354; *Broschart* v. *Tuttle,* 50 Conn. 1, 21 Atl. 925, 11 L. R. A. 33.

The case under consideration seems to come clearly within the general rule that, although a person has sustained damages, if the damages arose out of an illegal act or transaction in which he was engaged, he cannot recover.

In *Newcomb* v. *Boston Protection Dept., supra,* it was said in the opinion of the court that "no case has been brought to our attention, and upon careful examination we have found none in which a plaintiff whose violation of law contributed directly and proximately to cause him an injury, has been permitted to recover for it, and the decisions are numerous to the contrary."

It was held in *M. K. & T. Ry. Co.* v. *Roberts* (Texas), 47 S. W. 270, that an employee (an engineman) could not recover damages from his employer for injuries suffered while running his engine within the limits of a city at a higher rate of speed than that fixed by ordinance, if such negligence proximately contributed to the injury.

*Little* v. *Southern Ry. Co.,* 120 Ga. 347, 47 S. E. 953, 66 L. R. A. 509, 102 Am. St. Rep. 104, decides that an employee (engineman) of a railroad company cannot recover damages from his employer for injury suffered while running his engine in violation of a penal statute or a municipal ordinance, if such injury was proximately caused by such violation.

In each of the two cases last cited it was sought, as in this case, to, escape the effect of the plaintiff's conduct in violating the ordinance, etc., upon the ground that the defendant itself was responsible for such violation; but in each it was held, and properly so we think, that if the railway, company knew that the ordinance was regularly violated by its employees it would not relieve the violator of the law of the effects of such violation. It would be contrary to public policy for the courts to relieve a person of the effect or consequence of his violation of law upon the ground that the railroad company and its employees were in the habit of. violating the particular law.

The plaintiff insists that even if the evidence showed that her intestate was violating the city speed ordinance when injured, and that such violation directly contributed to his injury, and was therefore negligence as a matter of law, instructions "A," "B" and "E," which so told the jury, were properly rejected by the court because such violation of the ordinance was not stated in the railway company's grounds of defense.,

One of these grounds of defense (the 5th) states: "That the plaintiff's intestate was guilty of contributory negligence." In order to prove that the plaintiff's intestate was guilty of contributory negligence, no other than the plea of "not guilty" was necessary. On motion of the plaintiff, the court ordered the railway company to file the particulars of its defense, which was done. No objection was made to the statement filed. Under the fifth ground stated, the railway company clearly had the right to introduce any evidence which showed that the plaintiff's intestate was *per se* guilty of contributory negligence, or being relevant tended to show, along with the other facts and circumstances of the case, contributory negligence.

From what has been said, it follows that the court is of opinion that the trial court erred in refusing to give in-

structions "A," "B" and "E" offered by the railway company, and in giving instruction No. 7, which is in conflict with them.

The refusal of the court to give the following instruction offered by the railway company is assigned as error: "The court instructs the jury that while they are the judges of the facts, the court is the judge of the law, and it is the duty of the jury to accept and act upon the law as stated in the instructions, they applying the facts as they may determine them thereto."

While the instruction in question correctly stated the law, no prejudice resulted to the plaintiff in error from the court's refusal to give it, since the court stated to the jury, after reading to them the other instructions, that the court was the judge of the law as applied to the case, and they were the judges of the facts and the weight of the testimony.

The court refused to permit the railway company to introduce evidence tending to show that the plaintiff's decedent had the reputation among his fellow-employees as a fast runner and had, previous to the accident in which he was injured and at the same point, disregarded the speed ordinance. This action of the court is assigned as error.

The general rule is that such evidence is not admissible.

Prof. Wigmore, in his work on Evidence, sec. 65, in discussing the admissibility of evidence of that character, says: "A few courts have shown an inclination to admit exceptionally the character of a person charged with a negligent act (contributory negligence if a plaintiff) as throwing light on the probability of his having acted carelessly on the occasion in question; provided, that the other evidence leaves the matter in great doubt, or that the evidence is purely circumstantial, or (as sometimes put) that there are no eye-witnesses testifying. . . . Such evi-

dence is no doubt likely to be of some probative value in such cases, and under the above limitations is hardly contrary to the ordinary policy of avoiding confusion of issues (*ante* 64). As a matter of law, however, the doctrine is maintained in a few jurisdictions only and has been expressly repudiated in many."

Even in those jurisdictions where this exceptional rule prevails, as stated by Prof. Wigmore, the rejected evidence would not have been admissible under the facts of this case, since the uncontradicted evidence shows that the engineer was running his engine at a speed of from 12 to 15 miles an hour instead of four miles, the maximum speed permitted by the ordinance. The court properly rejected the evidence.

For refusing to give instructions "A," "B" and "E" offered by the railway company, and for giving instruction No. 7, the judgment complained of must be reversed, the verdict of the jury set aside and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*