JUSTICE LACY,
dissenting.
Until today, Virginia, like virtually all other jurisdictions, recognized a distinction between evidence of one’s general habits and evidence of one’s specific habits and considered specific habit evidence relevant and admissible under certain conditions. 1 McCormick on Evidence § 195 (John William Strong ed., 4th ed. 1992); 1A Wigmore, Evidence § 93 (Tillers rev. 1983). Compare Cherry v. D.S. Nash Construction Co., 252 Va. 241, 475 S.E.2d 794 (1996), with Jackson v. Chesapeake & Ohio Ry. Co., 179 Va. 642, 20 S.E.2d 489 (1942), Graham v. Commonwealth, 127 Va. 808, 103 S.E. 565 (1920), Washington, A. and Mt. V. Ry. Co. v. Trimyer, 110 Va. 856, 67 S.E. 531 (1910), and Alexandria & F.R.R. Co. v. Herndon, 87 Va. 193, 12 S.E. 289 (1890).
Following existing Virginia precedent, the trial court in this case determined that the evidence at issue was specific habit evidence and considered its admissibility on that basis. In reversing the trial court, the majority recites the rule applicable to general habit evidence, and applies it to the facts of this case. Because I believe the trial court analyzed the evidence correctly and in accordance with our prior cases in ruling on its admissibility, I respectfully dissent.
Evidence of general habits, such as evidence that a person generally is a careful driver offered to show that he did not act negligently at the time in question, regardless of any probative value it may have, has been held inadmissible per se. Thus, in Jackson, we said:
[According to the weight of authority, evidence of the general habits of a person is not admissible for the purpose of showing the nature of his conduct upon a specific occasion. Accordingly, in actions for negligence the courts generally deny the *316 admissibility of evidence of the reputation of the defendant for negligence, his habits of negligence, his habitual negligent conduct, etc., upon the issue of his negligence at the time of the injury complained of.
179 Va. at 649, 20 S.E.2d at 492; see also Cherry, 252 Va. at 244, 475 S.E.2d at 796.
However, this blanket rejection of general habit evidence has not been extended to evidence of specific habitual conduct, that is, evidence that a person regularly reacts to a specific set of circumstances in the same manner. We concluded long ago that such specific habit evidence is probative of, and thus relevant to, such person’s actions on a particular occasion under similar circumstances. “Of the probative value of a present habit, or custom, as showing the doing on a specific occasion of the act which is the subject of the habit or custom, there can be no doubt.” Graham, 127 Va. at 823, 103 S.E. at 570 (emphasis added). Such evidence is not automatically admissible under the prior cases decided by this Court, but neither is it automatically inadmissible under those cases or under the rule recited in Jackson. Rather, as Jackson pointedly observed, “[tjhe admissibility, as well as the probative value, of this class of [specific habit] evidence depends in a large measure upon the circumstances in which it is offered.” Jackson, 179 Va. at 647, 20 S.E. at 491.
Thus, this Court has affirmed the admission of evidence showing that the railroad company’s trains had habitually stopped at a particular place on arriving at the station because such evidence “did tend to prove” whether the train was stopped or in motion at the place plaintiff was injured. Herndon, 87 Va. at 199, 12 S.E. at 290. Likewise, testimony that a train did not stop at an intersection on other prior occasions tended to prove that it did not do so on the day of the accident in issue, and was thus properly admitted. Trimyer, 110 Va. at 858-59, 67 S.E. at 532-33.
The evidence at issue in this case was the habit of recording complaints of chest pains in a patient’s record and re-evaluating the patient in response to the patient’s complaint of chest pains following the completion of a stress test. The appellee argued that the evidence was not evidence of general habits and was not offered to show a general disposition toward non-negligent acts. According to the appellee, “[w]hile the challenged evidence admittedly has a bearing on the question whether Dr. Purohit was negligent, the primary purpose for which it was offered was to prove that the event (the alleged *317 complaints of chest pain after the Persantine Stress Test had ended) upon which the plaintiff relies as giving rise to the duty to reevaluate and hospitalize Mrs. Vaughan did not occur, . . . .”
The trial court agreed with the appellee, stating that the evidence was not general habit evidence offered for the purpose of showing that the defendants “conducted themselves in a safe and careful manner,” but evidence “of a specific response to a particular factual situation.” Before admitting the evidence, the trial court further required that the evidence offered meet the test of regularity, that is, in the words of the trial court, that the actions were “numerous enough to base an inference of systematic conduct or . . . regular response to a repeated specific situation.”
The admissibility of evidence is within the discretion of the trial court. Roll ‘R’ Way Rinks, Inc. v. Smith, 218 Va. 321, 326, 237 S.E.2d 157, 161 (1977). The evidence in this case was specific, not general, habit evidence; it was relevant to and probative of a fact in issue — whether the patient complained of chest pains following the stress test; there was no assertion that admission of the evidence would unduly lengthen the trial or confuse the jury. There is nothing in this record to support a finding by this Court that the trial court abused its discretion in admitting this evidence in this case. Accordingly, I find no basis to reverse the judgment of the trial court.
In reversing the trial court, the majority relies heavily on the Jackson case, a negligence action against a railroad company for injuries suffered when a train hit a vehicle occupied by the plaintiff at a railroad crossing. The decision in Jackson was not based on a finding that the proffered evidence was inadmissible habit evidence, but rather that the evidence was inadmissible impeachment evidence, the ground asserted by the plaintiff in his objection to the trial court’s ruling. 179 Va. at 650-51, 20 S.E.2d at 492-93. As such, the Court’s discussion of habit evidence in Jackson, which the majority finds so persuasive, is merely dicta. Nevertheless, because I believe the majority misinterprets the dicta in Jackson, a full discussion of the case is warranted.
An issue described by the Court in Jackson as “vital” to establishing the railroad’s negligence in that case was whether the railroad crossing signals required by statute were given on the day of the accident. The statutory signal requirements were “two sharp sounds of the whistle and a continuous ringing of the bell, or the whistle sounded continuously or alternatively with the bell from a point at least 300 yards, and not more than 600 yards, from the crossing.” Id. *318 at 645, 20 S.E.2d at 490. The failure to give a proper signal constituted negligence per se. Thirty-four eyewitnesses testified on this issue, the majority of which testified that the crossing signals were given. Id.
The evidence in dispute was offered by the plaintiff and consisted of notations made by a person stationed at a nearby business regarding the crossing signals given on seven days seven months after the accident. The notations were that “different crossing signals were given;” “the whistle was blown on each day mentioned” but that “the number of blasts varied,” and that the bell was not rung on any of the days. Id. at 646, 20 S.E.2d, at 489. The trial court refused to admit this evidence.
On appeal, the Court in Jackson, as noted above, acknowledged the rule against the admission of general habit evidence but also acknowledged that the rule did not apply to all habit evidence, citing other Virginia cases in which habit evidence was admitted. Id. at 647, 20 S.E.2d at 491. The Court in Jackson, like the majority here, did not specifically classify the proffered evidence as evidence of general or specific habit. However, the Jackson Court did not reject the proffered specific evidence under the rule that evidence of general habits is inadmissible per se as the majority states. This much is clear from the fact that the court engaged in a lengthy analysis of the reliability, relevancy, and prejudicial effect of the proffered evidence, which analysis would have been unnecessary for application of a per se rule against admissibility.
Recognizing that proffered specific habit evidence “may not in fact have sufficient regularity to make it probable that it would be carried out in every instance . . . ,” and that “[w]hether or not such sufficient regularity exists must depend largely on the circumstances of each case,” 179 Va. at 650, 20 S.E.2d at 492 (emphasis added) (citing Wigmore), the Court in Jackson affirmed the trial court’s refusal to admit the plaintiff’s proffered evidence, reasoning that the evidence offered involved incidents “too remote in time and too indefinite in substance to be relevant to the question, . . . .” Id.
The Court’s conclusion in Jackson that the proffered habit evidence in that case did not qualify as admissible specific habit evidence did not represent a departure from previous cases. The proffered evidence in Jackson differed significantly in quality from the specific habit evidence admitted in previous cases. See Trimyer, 110 Va. 856, 67 S.E. 531; Herndon, 87 Va. 193, 12 S.E. 289. The purportedly habitual act at issue in Jackson — giving the signal cross *319 ings in the manner required by statute — was not a simple, single act. It included alternative formulas for sounding the signals which had to be performed at certain distances. The proffered evidence only established that different crossing signals were given, some of which may have been in compliance with the statutory requirements, such as the continuing blast of the signal. Also in contrast to prior cases, the evidence offered pertained solely to actions after the accident, rather than prior to the accident, and consisted of only seven occasions. Under these circumstances, it is not surprising that the proffered evidence of a specific habit was determined to be inadmissible. The reasons stated by the Court in Jackson for rejecting the evidence at issue in that case reflected the analysis which must be applied by a trial court each time a party seeks to introduce evidence of a specific habit.
As indicated above, the trial court in the instant case engaged in just such an analysis and concluded that the evidence was relevant and admissible and unlikely to cause prejudice or undue delay. The majority concludes that this evidence offered and admitted by the trial court was inadmissible because it was evidence of “collateral” matters. This conclusion rests on a legal principle announced by the majority that, “evidence of habitual conduct is inadmissible because it consists only of collateral facts, from which no fair inferences can be drawn, and tends to mislead the jury and to divert its attention from the issues before the court.”
The majority cites three cases for support of this principle: Jackson, Cherry, 252 Va. at 244-45, 475 S.E.2d at 796; and Spurlin v. Richardson, 203 Va. 984, 990, 128 S.E.2d 273, 278 (1962). However, of these cases only Jackson involves any discussion of specific habit evidence, and the referenced passage in each case is nothing more than a recitation of the unremarkable proposition that irrelevant, collateral evidence is inadmissible. In fact, all three cases refer to Moore v. City of Richmond, 85 Va. 538, 539, 8 S.E. 387, 388 (1888), as the source of the statement. “It is an elementary rule that the evidence must be confined to the point in issue, and hence evidence of collateral facts, from which no fair inferences may be drawn tending to throw light upon the fact under investigation, is excluded.” Id. Moore did not involve habit evidence at all, but rather involved evidence offered by the plaintiff “for the purpose of proving the defective condition of the sidewalk at the place where the accident occurred” that another person “on the same night, fell into the same hole” as plaintiff. Id. Therefore, I believe the majority has *320 misinterpreted Jackson, as well as Cherry and Spurlin, as support for a legal principle that all habit evidence is evidence of collateral facts. While the legal principle enunciated by the majority may arguably be valid with regard to general habit evidence, its applicability to evidence of specific habits must be determined on a case by case basis.
Of equal concern to me is the majority’s statement that the disputed evidence in this case was “collateral to the issue of [the defendants’] conduct and the decedent’s condition at the time of the incident in question” and, therefore, was not relevant to “the issues at trial, namely, whether this decedent complained of chest pains after her stress test.” This conclusion ignores a crucial factual issue in this case — whether the plaintiff complained of chest pains following the stress test.
The evidence of the defendant’s habit of recording chest pain complaints and re-evaluating the patient whenever a patient complains of chest pain tends to show that they would have done the same had decedent complained of chest pain at the time in question. This evidence, combined with the fact that decedent’s records reveal no chest-pain complaints or re-evaluation, tends to prove that decedent did not, in fact, complain of chest pain. The disputed evidence is thus demonstrably probative of a crucial factual issue in the trial; it simply is not collateral to “the issues at trial.” See Herndon, 87 Va. at 199, 12 S.E. at 291 (“It is a settled rule of evidence that, whatever tends to prove the issue, or constitutes a link in the chain of proof, is relevant and admissible.”)
Finally, the majority’s conclusion that the evidence at issue is inadmissible is not supported by any discussion of why no reasonable inferences can be drawn from the evidence, why the evidence misleads and diverts the attention of the jury in this case, or how this evidence differs from the specific habit evidence directly addressed and held admissible in Trimyer and Herndon, cases which have not been overruled and which were specifically acknowledged by this Court in Jackson.
I recognize the majority’s valid concern that this type of evidence poses the danger of confusing the jury and causing mini-trials. However, that danger is greater in some cases than in others and is nonexistent in still other cases. Thus, the trial court must consider this danger, in relation to the probative value of the proffered evidence, in determining whether to admit specific habit evidence in any particular case — the type of determination made daily by trial courts in *321 ruling on the admission of evidence. Because I believe the trial court made this determination correctly in this case, I would affirm.