# Richmond.

## NORFOLK AND WESTERN RAILWAY CO. v. THOMAS, TRUSTEE, AND OTHERS.

### January 13, 1910.

### Absent, Buchanan, J.

1. EVIDENCE—*Comparing Methods of Work—Rebuttal—Railroads*—A defendant, who has made the plaintiff's witness his own on the subject of the best form of spark arrester, cannot object if the plaintiff, on re-examination, asks the witness whether or not the device used for arresting sparks by another company is preferable to that used by the defendant.

2. APPEAL AND ERROR—*Errors Corrected by Instructions—Harmless Error.*—If any prejudice which a party could have suffered by permitting a witness to answer an improper question was corrected in the trial court by a proper instruction to the jury, it is not the subject of complaint in this court.

3. RAILROADS—*Fires—Evidence—Number of Passing Trains.*—When the train which set fire to the plaintiff's house is not identified, and the train dispatcher of the defendant is on the stand as a witness for the defendant in an action to recover for the value of the house, it is entirely competent for the plaintiff to make him his witness for the purpose of showing what trains had passed the house at an opportune time for starting the fire.

4. RAILROADS—*Fires—Excessive Speed of Trains—Evidence—Time-tables Dated Five Years After Fire.*—In an action against a railroad company to recover for a loss occasioned by a fire set out by its engine in the year 1903, which was running at the rate of thirty-eight miles an hour, one of its time-tables for the year 1908, showing the maximum rate of speed of such trains to be thirty miles an hour, may be offered in evidence by the plaintiff as tending to show that the rate of thirty-eight miles an hour in 1903 was unreasonable and excessive, in the absence of evidence showing any change in the roadbed or traffic of the defendant since 1903, and when the time table of 1903 was inaccessible to the plaintiff. If the rules regulating the speed of trains in 1903 were in existence, they were in the possession of the defendant company, and could be produced by it.

5. DAMAGES—*Value of Building Burned.*—The measure of damages for a house destroyed by a negligent fire is the value of the house at the time of its destruction.

6. LACHES—*Action Within Statutory Period—Evidence.*—If an action to recover for burning plaintiff's house be brought within the statutory period, the causes of delay in bringing and prosecuting the action, and the time at which an insurance company intervened to claim the recovery, if any, are irrelevant and immaterial on the issue of the defendant's liability for the burning.

7. RAILROADS—*Fires—Prima Facie Case for Plaintiff—Burden on Defendant.*—Where the evidence shows that a fire which destroyed a house could only have been caused by the passing engines of a railroad company, that there was no fire in the house and no other way of accounting for it, but the particular engine setting out the fire is not identified, and it may have been set by any one of four engines which passed the house at an opportune time for starting the fire, the railroad company is presumptively charged with negligence, and it has the burden of showing that each of the four engines was properly equipped and operated.

8. RAILROADS—*Fires—Prima Facie Case for Plaintiff—Proof Required of Defendant.*—In an action against a railroad company to recover the value of property destroyed by fire, when the plaintiff has made out a *prima facie* case that the fire was set out by sparks from an engine of the defendant, the burden is on the defendant to show that it had availed itself of all the best mechanical contrivances and inventions in known practical use for arresting sparks.

9. RAILROADS—*Fires—Dry Seasons—Greater Care.*—In an unusually dry season, when all inflammable material is very dry and liable to be set on fire by the smallest spark, and a wind is blowing from an engine toward wooden buildings or combustible material, greater care and caution are required of a railroad company in the operation of its trains than when these conditions do not exist.

Error to a judgment of the Circuit Court of Appomattox county in an action of trespass on the case. Judgment for the plaintiffs. Defendant assigns error.

*Affirmed.*

The opinion states the case.

Instruction 2 given at the instance of the plaintiffs was as follows:

"The court instructs the jury that if they believe from the evidence that the plaintiffs' property in the declaration mentioned was set on fire by sparks from an engine or engines of the defendant company, that then the defendant company is presumptively chargeable with negligence and the burden is on it to prove that it had availed itself of all of the best mechanical contrivances and inventions in known practical use to prevent the burning of the plaintiff's property by the escape of fire, and had exercised and observed every reasonable precaution in selecting competent employees and in operating its trains and engines, and unless the jury believe from the evidence that the defendant company had availed itself of all the best mechanical contrivances and inventions in known practical use to prevent the burning of the plaintiffs' property by the escape of fire, and observed every reasonable precaution in selecting competent employees and in operating its trains and engines, they must find for the plaintiffs such damages as they may believe from the evidence the plaintiffs have sustained by reason of such fire.

"The court, however, instructs the jury that the law recognizes the fact that the skillful do not agree in the matter of instrumentalities and allows to every one using mechanical devices the freedom of action and judgment which must be an incident to such differences in judgment. The law does not permit a jury to condemn a device because some other person using a similar device prefers a different pattern." (Memorandum: The last clause of this instruction, beginning with "The court, however, instructs," etc., was added upon request of the defendant below.)

*F. S. Kirkpatrick,* for the plaintiff in error.

*Flood & Ferguson* and *F. C. Moon,* for the defendants in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by the defendants in error to recover of the Norfolk and Western Railway Company damages for its alleged negligence in burning a dwelling house held by the plaintiff, J. O. Thomas, as trustee for his wife, which was occupied by the plaintiffs as their home. There was a verdict and judgment in favor of the plaintiffs, which this writ of error brings under review.

Objection is taken to the action of the circuit court in permitting J. I. Harvey, an engineer who had run on the Southern railway, to testify that the device for arresting sparks employed by the Southern railway was, in his opinion, preferable to that used by the defendant company; that it was easier to operate a train with the device used by the defendant, but that the device used by the Southern threw less fire.

The record shows that this witness was not introduced by the plaintiffs to speak as to the relative merits of different spark arresters, and was not asked upon his examination in chief to give any evidence on that subject. The plaintiff in error, on cross-examination, made the witness his own on the subject of the best form of spark arrester, and the question objected to, which was asked by the plaintiffs, was responsive to the evidence which the defendant had drawn out from its own witness. The defendant cannot now complain of evidence that it alone is responsible for. Moreover, if the defendant could have suffered any prejudice on this account, the harm was avoided, at its instance, by instruction No. 2, which fully guards the rights of the defendant in this respect by telling the jury "that the law recognizes the fact that the skillful do not agree in the matter of instrumentalities and allows every one using mechanical devices the freedom of action and judgment which must be an incident to such differences in judgment. The law does not permit a jury to condemn a device because some other person using a similar device prefers a different pattern."

It is further insisted that the court erred in allowing the witness, C. N. Abbott, to state that, after the use of a certain

hopper in the front end of the locomotive was abandoned by the defendant, more sparks came out of the stack than escaped while the hopper was used. In answer to this contention it is only necessary to refer to what has been said with respect to the objection made to the evidence of the witness Harvey. What is there said is equally applicable here and need not be repeated.

It is further objected that it was error to require the train dispatcher to give evidence of the trains passing the plaintiffs' house other than the freight which the plaintiff, Thomas, had identified as causing the fire.

The record shows that there were four trains that passed the plaintiffs' home between the hours of twelve and one o'clock, the time being opportune for causing the fire. Thomas saw and mentioned one of these trains, but he did not identify the train he saw as the one that caused the fire. The records of the defendant company showed what trains passed the house and the time when each passed. When the train dispatcher was on the stand with this record before him, it was entirely competent for the plaintiffs to make him their witness for the purpose of showing what trains had passed the house at an opportune time for starting the fire. This was all that was done, and the objection was properly overruled.

It is further contended that it was error to permit the introduction of a time-table for the year 1908, in order to prove the speed allowed in 1903 when the fire occurred.

If the rules regulating the speed of trains in 1903 were in existence, they were in the possession of the defendant company and not accessible to the plaintiffs. The time-table of 1908 was not introduced to show the schedule speed of trains in 1903, but for the purpose of showing what the defendant regarded as a reasonable rate of speed in 1908, thereby tending to show what was a reasonable rate of speed in 1903. With the exception of an additional station, there was no evidence to show that any changed conditions in the roadbed or the traffic of the defendant had taken place since 1903 that would alter or affect the speed

allowed for its trains, nor does any reason appear why a greater speed was permissible in 1903 than in 1908. The schedule of 1908 shows that thirty miles an hour was the maximum speed allowed for this class of trains in emergencies, and yet the evidence shows that the trains in question were making a speed of more than thirty-eight miles an hour. This tends to show that in 1903, at the time of the fire, the trains involved were running at an unreasonable and excessive speed. The tendency is to increase rather than diminish the speed of trains. The objection to the introduction of the schedule of 1908 was properly overruled.

It is further urged that the circuit court erred in refusing to give the first instruction asked for by the defendant, which was as follows: "The court instructs the jury that in considering the value of the house they must take in view its location, and if they believe from the evidence that the value of the house upon the farm was not such a sum as would replace it, the jury shall only award such a sum as the place has suffered by reason of its destruction."

This instruction is not clear and is misleading. The rule for measuring damages in this class of cases is, that the measure of recovery is the value of the property destroyed. *Norfolk & W. R. Co.* v. *Bohannon,* 85 Va. 293, 7 S. E. 236.

In the case cited the suit was to recover damages for the destruction by fire of an orchard. In passing upon an instruction in that case this court said: "The instruction given stated the rule in cases of this kind as well, perhaps, as it can be done, when it said that the measure of recovery is the value of the property destroyed."

In 33 Cyc., pp. 1391, 1392, citing numerous cases, the rule is stated as follows: "Where buildings are injured or destroyed it is ordinarily held that they are capable of a separate valuation, and that the measure of damages is the value of the property at the time of its destruction."

The instruction did not state the rule correctly and was properly refused.

It is contended that the court erred in refusing to give the second instruction asked for by the defendant, which tells the jury that if the defendant negligently caused the fire in question it is liable to the intervening petitioner, the Virginia Fire and Marine Insurance Company, to the extent of the insurance paid by it, but that in determining the defendant's liability to the insurance company the jury may consider the fact, if it be a fact, that for more than five years after the fire the insurance company made no demand upon the defendant for repayment of the loss occasioned it.

The record shows that the plaintiffs put their claim for the destruction of their property into the hands of their attorneys soon after the fire. The causes of the delay in bringing and prosecuting this suit are not material in this connection. The suit was brought within the statutory period. The insurance company has intervened in the suit, by petition, asking that it may be repaid its loss by the fire out of any damages the plaintiffs may recover, and the plaintiffs have agreed of record that the company shall be so paid. The time of its intervention does not appear, and cannot affect the right of the plaintiffs, through whom the company claims, to recover the value of the property destroyed. The instruction sought to introduce a wholly irrelevant issue that could only have confused and misled the jury. It was, therefore, properly refused.

Instruction Nos. 3 and 4, asked for by the defendant and refused are predicated upon the assumption that the plaintiffs had identified the local freight as the particular train that had caused the fire, and they announce the doctrine that where the negligent act may have arisen from one of two sources, for one of which the defendant was responsible and for the other it was not, the plaintiffs cannot recover.

The evidence shows that four trains of the defendant passed the scene of the fire within less than one hour. The fire may have originated from any one of these engines. As already stated, the evidence does not sustain the contention that the plain-

tiffs had identified any particular engine as being responsible for the fire. The doctrine announced by these instructions has no application to the facts of this case. The evidence shows that the fire could only have been caused by the passing trains; there was none in the house and no other means of accounting for it. Under all the circumstances disclosed by the evidence the defendant was presumptively chargeable with negligence, and was obliged to assume the burden of showing that each of the four engines, either one of which may have caused the fire, was properly equipped and operated.

Where the particular locomotive which caused the fire is not identified the plaintiffs may show defects in the spark-arresting apparatus of any one of the defendant's engines which may have caused the fire; and the defendant may show that all of its engines passing on the day of the fire were properly equipped. Enc. of Ev., Vol. 10, p. 545; *N. & W. Ry. Co. v. Perrow,* 101 Va. 345, 43 S. E. 614.

The case of *C. & O. Ry. Co.* v. *Heath,* 103 Va. 67, 48 S. E. 508, cited by defendant, has no bearing upon the facts of this case. There a mill near the railroad, operated by a steam engine, was burned at night. The evidence did not show whether the fire arose from the engine which ran the mill or from a passing engine of the railway company. Under those circumstances it was held that no liability was fastened upon the company.

Objection is taken to instruction No. 2 given by the court. The chief objection urged to this instruction is that in laying down the law touching the burden of proof the following language is employed: " . . . and the burden is on the defendant to prove that it had availed itself of all the best mechanical contrivances and inventions in known practical use."

This court has stated the law in the language objected to, in numerous cases involving the destruction of property by fire from railroad engines. *Brighthope Ry. Co.* v. *Rogers,* 76 Va. 443;

*Patteson* v. *C. & O. Ry. Co.,* 94 Va. 16, 26 S. E. 393; *Kimball, Receiver* v. *Borden,* 97 Va. 477, 34 S. E. 46; *White* v. *N. Y. Ry. Co.,* 99 Va. 357, 38 S. E. 180; *N. & W. Ry. Co.* v. *Fritz,* 103 Va. 687, 49 S. E. 971, 106 Am. St. Rep. 911, 68 L. R. A. 864. Moreover, if the language objected to had been improper, no prejudice could have resulted to the defendant therefrom, in view of the addition to this instruction which was made at its instance. This addition has been already quoted in connection with our consideration of the first assignment of error and need not be repeated here. Taking the instruction as a whole, it was a clear statement of the law applicable to the facts of the case, and, therefore, properly given.

The third instruction given by the court is made the subject of objection. This instruction tells the jury that when the doing of any particular act is attended with unusual hazards, unusual care must be exercised, but when the performance of the act is attended with only ordinary hazards, a less degree of care is required; that in proportion as the hazards increase there should be a corresponding increase in the care exercised; that in an unusually dry season when all inflammable material is very dry and liable to be set on fire from the smallest spark, and the wind is blowing from an engine toward wooden buildings or combustible material, greater care and caution are required than when these conditions do not exist.

These well settled principles were applicable to the fact of the case, and the objection to the instruction is without merit. *N. & W. Ry. Co.* v. *Fritz, supra.*

Finally it is insisted that the court erred in refusing to set the verdict aside, and in giving judgment thereon for the plaintiffs.

It is only necessary to say, with respect to this assignment of error, that a careful examination of the record shows that the verdict of the jury is fully sustained by the evidence, and that no error was committed by the court which would justify a reversal of the judgment; and, therefore, it is affirmed.

*Affirmed.*