# Wytheville

## CHARLES JACKSON v. THE CHESAPEAKE & OHIO RY. CO.

June 8, 1942.

Record No. 2526.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Denny, Valentine & Davenport, C. Denny White, T. Munford Boyd* and *Junius R. Fishburne,* for the plaintiff in error.

*Leake & Spicer,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This action was brought to recover damages for personal injuries sustained by Charles Jackson, while riding in the cab of a truck driven by a companion, in a railway crossing accident at Crozet, Virginia. The trial court entered judg-

ment for defendant on the verdict of the jury. From that judgment this writ of error was awarded plaintiff.

The one vital issue to determine the negligence of defendant was whether the statutory crossing signals required by Code, sec. 3958, were sounded on August 23, 1940—the date of the accident. On this issue thirty-four witnesses, eight for plaintiff and twenty-six for defendant, were introduced.

The testimony of three of the witnesses introduced by plaintiff on this issue was negative, the testimony of four was positive that the proper crossing signals were not sounded, and one witness was impeached.

The testimony of the twenty-six witnesses called by defendant is positive that the crossing signals were given. Several of these witnesses said that they did not hear the bell, but they emphasized the fact that they heard an unusual number of blasts of the whistle and that it was blown almost continuously for several hundred yards west of, and until the engine passed, the crossing.

The railway crossing signals required by statute consist of two sharp sounds of the whistle and a continuous ringing of the bell, or the whistle sounded continuously or alternately with the bell from a point at least 300 yards, and not more than 600 yards, from the crossing. The crossing signals required by the defendant company consist of four blasts of the whistle—one long, two shorts and a prolonged blow—and continuous ringing of the bell. In other words, the railway company requires four blasts of the whistle while the statute requires only two blasts. However, when employees of the railway company refer to the "crossing signals" or the "crossing blows," evidently they refer to the "crossing signals" or "crossing blows" required by the company and not those required by statute.

Passenger train No. 4, which struck the truck involved in the accident, was pulled by two engines. G. I. Grasty, the engineer in charge of the front engine, on direct examination, stated that, on account of the number of trucks which usually gathered in Crozet during the peach season, he gave two sets of crossing blows instead of one, and that

on the day of the accident he gave two sets of crossing signals, one a little before reaching the whistle post. On cross-examination, he testified that his schedule for this run was the 6th, 7th, 8th and 9th, and the 22nd, 23rd and 24th of every month, four days in the first half and three days in the second half of the month; "that he had been on that schedule continuously up to the present time; that he always rings the bell and gives one set of crossing signals before this crossing, but in peach season, because of a lot of trucks in Crozet, he gives two sets, and for this reason he blew a little earlier than he should have."

In rebuttal, the plaintiff offered to introduce the testimony of Page Thomas, the substance of which was that he was stationed at the Crozet Motor Company's place of business in Crozet, and that during the month of March he made a notation of the crossing signals given by passenger train No. 4 for this crossing; that on seven days in March—March 6th, 7th and 9th, and the 22nd, 23rd and 24th—different crossing signals were given; and that, while the whistle was blown on each day mentioned, the number of blasts varied, and on no one of the days was the bell rung for the crossing.

The trial court refused to admit this testimony for the purpose of impeaching the testimony of G. I. Grasty. This ruling constitutes the only assignment of error stated in the petition.

Counsel for plaintiff expressly stated to the trial court that the rejected evidence was offered for the sole purpose of impeaching G. I. Grasty, and that it had no probative value. It was suggested that the evidence be admitted, and that the jury be instructed to confine their consideration of it to the credibility of Grasty. In this court it is urged that the evidence was admissible because it tended to prove a negligent "custom and habit" and therefore had probative value on the vital issue, whether the crossing signals were given.

Plaintiff concedes that if the issue raised by him on the cross-examination of Grasty is collateral, then the trial court committed no error in rejecting the testimony. On the other hand, he contends that it is admissible because it tends to prove by specific acts of omission that the engineer was

habitually negligent in giving the signals for this crossing. The reason urged for this position is that it is reasonable to infer that if a person usually performs an act in a particular way, the probabilities are that he performed the same act under investigation in his habitual way. This conclusion is supported by Wigmore on Evidence, (3d ed.), vol. 1, sec. 97, where this is said: "Negligence is, in one aspect, the not-doing of a particular act; but in another and more correct aspect, it is the doing of one act in a manner which amounts to negligence in that some other act is omitted which ought to have accompanied it. There is no reason why such a habit should not be used as evidential,—either a habit of negligent action or a habit of careful action."

The admissibility, as well as the probative value, of this class of evidence depends in a large measure upon the circumstances in which it is offered. The two Virginia cases cited and relied upon by plaintiff are *Alexandria Ry. Co.* v. *Herndon*, 87 Va. 193, 12 S. E. 289, and *Washington, etc., R. Co.* v. *Trimyer*, 110 Va. 856, 67 S. E. 531. In each of them the question presented was whether or not it was customary for the carrier to stop at certain designated points. This court held that, under the facts in those cases, evidence to prove the custom was relevant. There is another class of cases which permits the proof of similar acts of negligence—that is, evidence, tending to show that steam engines on occasions other than the one under investigation emitted live sparks and set numerous fires along the right of way, is relevant to prove that the particular fire under investigation was started by the railway. The admission of evidence of this nature is said to be a matter of necessity, because of the difficulty in obtaining direct proof of the origin of fire. "This class of evidence, it has been said, 'is exceptional in character at the best,' and not satisfactory in many ways, and is admissible as a matter of necessity because of the failure of direct proof, and as the best and only evidence that the nature of the case admits of." 51 C. J., Railroads, p. 1218. See *Norfolk, etc., R. Co.* v. *Thomas*, 110 Va. 622, 66 S. E. 817; *Kimball* v. *Borden*, 95 Va. 203, 28 S. E. 207.

In addition, this class of cases involves the construction,

equipment and management of the steam engine which is in possession of defendant and not available to plaintiff. These are circumstances which impel the court to admit the evidence for such·probative value as the jury may attach to it.

The rule adopted in the majority of jurisdictions is "that, where the driver of an automobile or an employee of a railroad is alleged. to have been negligent in a traffic accident ˙case, and where there were eyewitnesses, evidence that on former occasions such driver or employee had been in the habit of conducting himself as a careful and cautious driver, or had pursued a certain line of conduct, is ordinarily not admissible to show that he was acting with care and caution or otherwise, or was following the same method when the accident in question happened." Blashfield's Cyclopedia of Automobile Law and Prac., vol. 9, part 2, per. ed., p. 636.

In *Moore* v. *Richmond*, 85 Va. 538, 8 S. E. 387, this court, speaking through Judge Lewis, said: "It is an elementary rule that the evidence must be confined to the point in issue, ·and hence evidence of collateral facts, from which no fair inferences can be drawn tending to throw light upon the fact under investigation, is excluded, the reason being, as Greenleaf says, that such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice and mislead them; and, moreover, the adverse party, having had no notice of such a course of evidence, is not prepared to rebut it. I Greenl. Ev., sec. 52. * * *. Undoubtedly there are cases to the contrary, of which *District of Columbia* v. *Annes*, 107 U. S. 519, may be mentioned as one, but the true rule, we think, is as we have stated it."

In *Radford* v. *Calhoun*, 165 Va. 24, 181 S. E. 345, 100 A. L. R. 1378, the facts were that plaintiff, while driving his automobile along the streets of the city of Radford, collided with a pile of concrete curbing extending into the street. The city, in order to establish contributory negligence, offered to prove that for a number of weeks prior to the accident and under similar conditions a large volume of traffic had passed this street with no injurious results, and that on the same night, before and after the accident, other

motorists had passed without incident. Speaking to the point through Mr. Justice Eggleston, we said at page 35: "On the general proposition of the admissibility of proof of the absence of other accidents at the scene of the alleged defect, the courts are in hopeless conflict. Such testimony is admitted in some jurisdictions, while in others it is held inadmissible as raising collateral issues. See 13 Ruling Case Law, p. 511, sec. 423; 43 Corpus Juris, p. 1259, sec. 2023; 32 L. R. A. (N. S.) page 1161, note. * * *.

"Then, too, the admission of this evidence would have entitled the plaintiff to prove in rebuttal that other drivers had collided, or, perhaps, narrowly averted colliding with this obstruction. Thus the jury would have been confused with the trial of a number of collateral issues." See *Knight* v. *Moore*, 179 Va. 139, 18 S. E. (2d) 266.

█ Although the habit of doing a thing might seem naturally to have some probative value indicating that on a particular occasion, the thing was done as usual, according to the weight of authority, evidence of the general habits of a person is not admissible for the purpose of showing the nature of his conduct upon a specific occasion. Accordingly, in actions for negligence the courts generally deny the admissibility of evidence of the reputation of the defendant for negligence, his habits of negligence, his habitual negligent conduct, etc., upon the issue of his negligence at the time of the injury complained of." 38 Am. Jur. 1017.

The facts in this case do not bring it within any of the exceptions to the general rule. The substance of the rejected evidence is that on seven named days in March, seven months after the date of the accident, some crossing signals were given, but they were not the signals required by statute. If the evidence were held to be admissible, then, in fairness to defendant, it should be permitted to introduce evidence tending to prove not only that the crossing signals were given on the seven named days, but that for seven months prior to the accident, as well as seven months after the accident, the required signals had been given by this engineer.

Any such ruling would make the trial of actions of this nature interminable and would tend to confuse the jury

with the trial of a number of collateral issues. As stated, thirty-four persons who were in a position to hear or see the train as it passed this crossing testified as to the giving or not giving of the signals on the day of the accident. While Grasty is the employee of defendant who pushed the button that started the bell to ringing and who blew the whistle, he is only one of the twenty-six witnesses called by the defendant to establish the fact that the engineer complied with the provisions of the statute in sounding the crossing signals.

In any view of the case, the specific acts of negligence claimed to have been committed seven months after the alleged negligent act which caused the injury are too remote in time and too indefinite in substance to be relevant to the question, whether the crossing signals were given on August 23, 1940. "* * *, it is easy to see why in a given instance something that may be loosely called habit or custom should receive light weight, because it may not in fact have sufficient regularity to make it probable that it would be carried out in every instance or in most instances. Whether or not such sufficient regularity exists must depend largely on the circumstances of each case." Wigmore's Judicial Proof, 3rd ed., sec. 64.

Plaintiff, in noting his objection to the ruling of the court, stated: "If Your Honor please, the evidence I am referring to that the court excluded was the evidence of the witness Page Thomas, which was the *impeachment* of the engineer and *which we consider was very material and which the jury should have had the benefit of in deciding whether or not the engineer was telling the truth when he was on the witness stand.*" (Italics supplied.)

The record as a whole disclosed that plaintiff at no time contended in the trial court that the rejected evidence was admissible for the purpose for which he now contends it was. He did not claim in the trial court that this evidence tended to prove that Grasty was habitually negligent. "A party will not be allowed to specify one or more grounds of objection to evidence offered in the trial court and rely upon other grounds in the appellate court. He is regarded as

having waived all other objections to the evidence except those which he pointed out specifically.

"It is the duty of a party, as a rule, when he objects to evidence, to state the grounds of his objection, so that the trial judge may understand the precise question or questions he is called upon to decide. The judge is not required to search for objections which counsel have not discovered, or which they are not willing to disclose. It is also due to the party whose evidence is objected to, that the grounds of objection should be specified, so that he may have an opportunity to remedy the defect pointed out, if possible, and have the case tried upon its merits. * * *.

"The parties must stand or fall upon the case as made in that court. An appellate court is not a forum in which to make a new case. It is merely a court of review to determine whether or not the rulings and judgment of the court below upon the case as made there were correct. Any other rule, it has been well said, would overturn all just conceptions of appellate procedure in cases at law, and would result in making an appeal in such action a trial *de novo*, without the presence of witnesses, or the means of correcting the errors and omissions." *Warren* v. *Warren*, 93 Va. 73, 24 S. E. 913.

This principle, modified to some extent, is embraced in Rule 22 of this court. The application of it is likewise decisive of this case.

The judgment is

*Affirmed.*