# CIRCUIT COURT OF FAUQUIER COUNTY

Robert Kent Cassell

v.

William Worley Kirk

February 2, 1998

Case No. (Law) CL95-203

BY JUDGE JAMES H. CHAMBLIN

This case is before the Court on the motions of the defendant, William Worley Kirk, and National Mutual Insurance Company, the underinsured carrier, to set aside the verdict of the jury returned on November 21, 1997, and to grant a new trial.

For the reasons that follow, the motions are granted.

## Procedural History

This case arose out of a collision that occurred at approximately 1:00 a.m. on July 10, 1993, at the intersection of Routes 28 and 667 in Fauquier County between a Mazda pickup truck driven by the plaintiff, Robert Kent Cassell, and a Toyota sedan driven by Kirk. Cassell brought suit against Kirk on account of the personal injuries sustained in the accident.

The intersection was controlled by a traffic light. Kirk admitted that the light was red for him when he proceeded into the intersection and struck Cassell's vehicle.

At the jury trial commencing November 20, 1997, Kirk admitted that he was liable for Cassell's injuries. The jury decided only damages and returned a verdict of $165,000.00 in compensatory damages and $60,000.00 in punitive damages.

*Alcohol Evidence*

At trial the evidence of Kirk's involvement with alcohol consisted of the following:

1. Kirk's Testimony: He testified that neither he nor Randy James (the owner of the Toyota and the only passenger in it at the time of the accident) had drunk anything alcoholic that night before the accident. He testified that the Toyota contained full and empty beer cans at the time of the accident, but they had been in it before that night. He also denied that he had told Ricky Padgett, a witness to the accident, that he had been drinking that night. He testified that he received a cut to the head in the accident.

2. James's Testimony: He testified that neither he nor Kirk had drunk anything alcoholic that night and that "maybe" the Toyota was filled with beer cans.

3. Testimony of David Van Buskirk: He was a member of the Rescue Squad who responded to the scene of the accident. He testified that he saw a couple of guys "staggering around" at the scene. The context of his testimony indicated that the couple of guys were Kirk and James.

4. Padgett's Testimony: He lived near the scene of the accident and witnessed the collision. He immediately went to the scene. He testified that he saw that Kirk had a "little bit" of difficulty in walking at the scene. He testified that there were "beer cans everywhere" in the Toyota, and "you could smell the beer." He also testified that Kirk walked with a wobble at the scene and it could have been caused by drinking or the wreck. He did not know.

5. Testimony of Sergeant George H. Jolley, III, Fauquier Sheriff's Department: He was at the scene of the accident. Later at Prince William Hospital, he spoke to Kirk. Sergeant Jolley testified:

> I know he did have a laceration to his head. He was also in bed when I spoke to him there, also. And according to my notes, he had a strong odor of alcohol about his breath.

All of the foregoing alcohol-related evidence was admitted into evidence over the objection of counsel for Kirk and Nationwide. It was error to have admitted such evidence.

The issue of intoxication is properly admitted when there are circumstances present such as evidence showing that a person's manner, disposition, speech, muscular movement, general appearance, or behavior is affected by alcohol consumption. *Hemming v. Hutchison*, 221 Va. 1143, 1146

(1981). The mere odor of alcohol on a person's breath is not sufficient to establish his intoxication. *Baker v. Taylor*, 229 Va. 66, 69 (1985).

The evidence of an odor on Kirk at some unknown time after the accident, beer cans in the car, and Kirk's "staggering around" or wobbling at the scene without any evidence that it was caused by his drinking did not tend to prove his intoxication. There was no evidence that anyone saw him drink or that he admitted to drinking that night. The evidence admitted was irrelevant and prejudicial to Kirk. Any testimony about alcohol involvement is almost automatically prejudicial to Kirk, and even more so, in light of the request by Cassell for punitive damages.

The admission of such alcohol-related evidence cannot be justified merely because the plaintiff seeks punitive damages. The plaintiff's theory that Kirk engaged in conduct so wanton and willful as to show a conscious disregard for the rights of others because he deliberately ran the red light in a game of "chicken" does not make admissible any and all alcohol-related evidence. Even in a punitive damage situation, the egregious conduct is driving while intoxicated. It is not merely driving after consuming alcohol. Intoxication, of itself, will not subject a negligent driver to an award of punitive damages. *Huffman v. Love*, 245 Va. 311, 314 (1993). Therefore, the same general evidentiary rule as to alcohol-related evidence must apply whether the evidence is offered to prove intoxication or to support punitive damages.

### Prior Acts of Kirk and/or James

At trial, over the objections of counsel for Kirk and Nationwide, evidence was admitted of two prior occasions (one earlier that night and one about two weeks earlier) when the Toyota had been driven through the intersection on a red light. Evidence was admitted that James drove the Toyota through the red light about two weeks earlier while Kirk was a passenger and that, earlier that night, the Toyota went through the red light with Kirk driving. The evidence was conflicting on whether James had also driven the Toyota earlier that night.

Virginia appears to follow the majority of jurisdictions in cases of alleged negligence in traffic accident cases where there are eyewitnesses, and evidence of the actions of the driver on prior occasions is ordinarily not admissible to show that the driver was acting in a certain way at the time of the accident. *Jackson v. Chesapeake & O. Ry.*, 179 Va. 642, 648 (1942). Here, however, the plaintiff alleges that Kirk's conduct was more than merely negligent. The plaintiff's theory includes intentional conduct by Kirk.

Therefore, could such evidence be admissible to show Kirk's intent, i.e., to deliberately run the red light?

Assuming without deciding that the evidence of the two prior occasions of red-light running by the Toyota could be admissible if it showed Kirk's intent at the time of the accident, the evidence must be scrutinized to determine if it does tend to show that Kirk acted deliberately. The occasion two weeks earlier involved Kirk only as a passenger. His merely being a passenger in a vehicle that ran a red light does not tend to show that two weeks later he intentionally drove through the same red light. In other words, there is no evidence or other circumstance that would warrant using a prior bad act of James against Kirk, even if it involved the same kind of bad conduct. There was no evidence that Kirk and James regularly or habitually engaged in such red-light "chicken" games.

As to the earlier in the evening red-light running evidence, there was nothing presented to show that the driver ran the red light intentionally. A red light can be run negligently as well as intentionally. If it was run negligently earlier in the . evening, then it would not tend to show that it was run intentionally later. If the earlier incident is offered merely to show Kirk's negligence at the time of the accident, then it is barred under *Jackson.*

If the earlier in the evening occasion does not tend to show Kirk's negligence or intent at the time of the accident, then it is irrelevant to any punitive damage claim.

### *"Run It" Statement*

At trial over the objections of counsel for Kirk and Nationwide, evidence was admitted that as the Toyota approached the intersection with the red light, the passenger yelled "Run it." Padgett identified it as being said by James. The objection was hearsay. However, the statement was being offered not for the truth of it, but merely for its being said.

The relevancy of the statement is its effect on Kirk just prior to the accident. The jury could have found that Kirk heard the statement, acted on it, and deliberately and intentionally ran the red light. The statement tends to show the nature of the conduct. Therefore, it is admissible.

### *Punitive Damages*

The defendant admitted liability, but that does not prevent the plaintiff from showing the circumstances of the accident. Even without the alcohol-

related evidence or the other bad conduct evidence, the jury could have found that Kirk's conduct amounted to intentionally running a red light in a game of "chicken." Whether such conduct supports punitive damages is a question for the jury.

Considering the size of the verdict in relation to the plaintiff's medical expenses and the size of the punitive damages verdict, the jury was probably influenced by the alcohol-related evidence and the prior bad conduct evidence. Therefore, the defendant is entitled to a new trial.