Present:  All the Justices

JANE V. LIGON, ADMINISTRATOR OF THE
ESTATE OF PEARL V. VAUGHAN, DECEASED

v.  Record No. 982467   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                    September 17, 1999
SOUTHSIDE CARDIOLOGY ASSOCIATES,
P.C., ET AL.


        FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
                    Richard S. Blanton, Judge


     In this medical negligence case, we consider whether the

trial court erred in admitting "habit" evidence from medical

personnel to prove that a patient did not complain of pain on a

specific occasion, and that the defendant's treatment of the

patient conformed to his routine practice.

     Jane V. Ligon, administrator of the estate of Pearl V.

Vaughan, filed a wrongful death action in the trial court

against Dr. Girish Purohit and his medical practice, Southside

Cardiology Associates, P.C. (collectively, the defendant).

Ligon alleged, among other things, that the defendant was

negligent in failing to provide a proper diagnosis and treatment

of Vaughan's heart disease.

     The following evidence was presented in a jury trial.  In

May 1995, Vaughan experienced chest pains and received three

days of treatment at the Southside Community Hospital

(Southside) in Farmville.  Five days after her release, she

returned to Southside's Cardiac Diagnostic Unit (CDU) as an outpatient to take a Persantine stress test. In this test, the drug Persantine is administered to place additional stress on the patient's heart so that abnormalities can be detected and evaluated.

Vaughan's daughter, Audrey Johnson, took Vaughan to the hospital for the Persantine stress test and remained there during the course of the procedure. Under the standard protocol for this test, Vaughan completed a medical history form in the CDU and an intravenous "saline lock" was placed in her arm. Vaughan then went to the hospital's Nuclear Medicine Department where she received an injection of a radioactive medicine. A medical technician took photographic images, commonly referred to as a "nuclear scan," of Vaughan's resting heart.

After three hours, Vaughan returned to the CDU where another medical technician connected her to vital sign monitors and obtained various electrocardiograms (EKGs). Dr. Purohit supervised the injection of the Persantine and the administration of the stress test. The stress test took 14 minutes to complete. During the stress test, Vaughan experienced tightness and pain in her chest. At Dr. Purohit's direction, Vaughan was given nitroglycerin, and her chest pain stopped. After Vaughan completed the stress test, the heart monitor and EKG connections were removed and she returned to the

2

Nuclear Medicine Department where a technician took a second nuclear scan of her heart.

Vaughan left the hospital with Johnson and went to Johnson's home.  That night, Vaughan died in her sleep.  All three medical experts who testified at trial agreed that Vaughan probably died from an arrhythmia that resulted in cardiac arrest.  One of these three witnesses, Dr. James T. Rittelmeyer, a cardiologist, stated that Vaughan also had experienced a "heart attack" during the stress test administered by Dr. Purohit.  The other two medical experts disagreed with that conclusion.

Johnson testified that as she waited in the CDU reception area while her mother was undergoing the stress test, she heard Vaughan call her name.  Johnson stated that she went to the area where the test was being administered and found Vaughan lying on a gurney, dressed in her own clothes and not connected to any monitors.  Johnson said that Vaughan was crying, trembling, and complaining that she could not breathe and that she had pain in her chest and arm.

Johnson testified that Dr. Purohit was standing nearby, along with two female technicians or nurses.  Johnson stated that when she asked Dr. Purohit whether Vaughan's condition was normal, he assured her that it was and said that her mother would be fine once she went home and rested.

Dr. Purohit testified that he had no independent recollection of Vaughan's condition in the CDU. Debora S. Hurt, the CDU technician who cared for Vaughan, also had no independent recollection of Vaughan. However, Courtney Gates, the nuclear technologist who obtained the final nuclear scan of Vaughan's heart after the stress test, testified that she remembered Vaughan. Gates stated that Vaughan complained of indigestion or "stomach upset" at that time, but that she never complained of chest pain. At trial, all three medical experts testified that a violation of the standard of care would occur if a patient, complaining of chest and arm pain under the circumstances described by Johnson, were released from the hospital without further evaluation. Thus, a critical factual issue in the trial was whether Vaughan complained of chest and arm pain after completing the stress test.

Over Ligon's objection, the defendant was permitted to present evidence of the routine or "habit" of Dr. Purohit, Hurt, and Gates in responding to other patients who complained of chest pain after completing stress tests. Dr. Purohit testified that he had administered one or two stress tests per day over the last ten years, and that at least a dozen of those patients had complained of chest pain after completing the test and changing into their own clothes. He stated that whenever this occurred, he re-evaluated the patient by obtaining another EKG

4

and performing a physical examination.  Dr. Purohit testified that he had never failed to re-evaluate a patient who complained of chest pain on completion of a stress test.

Hurt testified that she had worked as a cardiac diagnostic technician for ten years.  When asked how many times she had observed patients develop complaints similar to those described by Johnson, Hurt responded that such complaints had occurred more than ten times.  She testified that when these complaints were brought to her attention, she reconnected the patients to an EKG monitor and had them re-evaluated by a physician.

Gates testified that during the 30 years she had worked as a nuclear technologist, patients had complained of chest pain "more than ten" times.  Gates stated that she immediately responded to those complaints by requesting assistance from the cardiac unit or the emergency room.

At the conclusion of the evidence, the jury returned a verdict in favor of the defendant.  The trial court entered judgment in accordance with the jury's verdict.

On appeal, Ligon argues that the trial court erred in admitting the defendant's "habit" evidence.  Ligon asserts that the challenged testimony permitted the jury to speculate that because Dr. Purohit, Hurt, and Gates provided proper medical care to other patients, they provided the same care to Vaughan. Ligon argues that under our holding in Jackson v. Chesapeake &

Ohio Ry. Co., 179 Va. 642, 20 S.E.2d 489 (1942), evidence of a defendant's habitual conduct is inadmissible to prove that the defendant acted in conformance with such conduct on a particular occasion.

In response, the defendant argues that the witnesses' testimony concerning their responses to other patients' complaints of chest pain was not evidence of general habit such as that addressed in Jackson, but was evidence of "specific responses to a specific situation." The defendant asserts that in a medical negligence action, when a defendant physician has no memory of a patient, evidence of the physician's routine or habit is relevant to establish his conduct with regard to that particular patient. The defendant further contends that the challenged testimony was not offered to prove that the defendant was not negligent, but merely was offered to show that a particular event, Vaughan's complaint of chest pain, did not occur. We disagree with the defendant's arguments.

Our decisions do not draw a distinction between "general" and "specific" habit evidence. Instead, the focus of our analysis has been whether the proffered evidence is relevant to the issues at trial. See Cherry v. D.S. Nash Constr. Co., 252 Va. 241, 244-45, 475 S.E.2d 794, 796-97 (1996); Spurlin v. Richardson, 203 Va. 984, 989-90, 128 S.E.2d 273, 277-78 (1962); Jackson, 179 Va. at 650, 20 S.E.2d at 492.

6

The reasoning we articulated in Jackson is persuasive in resolving the issue before us. There, a plaintiff brought a negligence action for personal injuries he sustained when the truck in which he was a passenger collided with a train. The engineer in charge of the train's engine testified that on the day of the accident, as well as on the 6th, 7th, 8th, 9th, 22nd, 23rd, and 24th day of every month, he rang the crossing bell and gave other crossing signals prior to the train's traversing the crossing. The plaintiff attempted to impeach this testimony with proffered testimony from a witness who would have testified that on the same days in a month other than that in which the accident occurred, the crossing bell was not rung before the train crossed the tracks. 179 Va. at 645-46, 20 S.E.2d at 490.

We held that the trial court did not err in refusing to allow the proffered testimony. We stated that evidence of a person's general habits is not admissible for the purpose of showing the nature of his conduct on a specific occasion. Id. at 649, 20 S.E.2d at 492. Such evidence of habitual conduct is inadmissible because it consists only of collateral facts, from which no fair inferences can be drawn, and tends to mislead the jury and to divert its attention from the issues before the court. See id. at 648, 20 S.E.2d at 491; Cherry, 252 Va. at 244-45, 475 S.E.2d at 796; Spurlin, 203 Va. at 990, 128 S.E.2d at 278.

7

The reasoning we employed in Jackson was a departure from our prior decisions in Alexandria & F.R.R. Co. v. Herndon, 87 Va. 193, 12 S.E. 289 (1890) and Washington, A. and Mt. V. Ry. Co v. Trimyer, 110 Va. 856, 67 S.E. 531 (1910), in which we approved the admission of evidence that a defendant had acted in an habitually negligent manner prior to the accident at issue. In Herndon, we held that evidence of the habitual stopping place of a train at a location where its rear car had no landing place for exiting passengers was admissible to prove that the train was stopped, rather than in motion, at this location when the plaintiff left the rear car and was injured. 87 Va. at 199, 12 S.E. at 291. In Trimyer, we approved the trial court's admission of evidence that the defendant railroad company, in violation of its alleged duty, previously had failed to stop its train at the same intersection where the plaintiff allegedly was injured by the defendant's moving train. 110 Va. at 858-59, 67 S.E. at 532.

After Trimyer, however, we repeatedly have stated that evidence of prior negligent habit is inadmissible to prove the acts of negligence alleged at trial. See Cherry, 252 Va. at 244-45, 475 S.E.2d at 796-97; Jackson, 179 Va. at 649, 20 S.E.2d at 492; Southern Ry. Co. v. Rice's Adm'x, 115 Va. 235, 248-49, 78 S.E. 592, 595 (1913). Moreover, in these negligence cases, we have rejected the admission of habit evidence offered to

8

prove the issues at trial for the primary reason that such evidence is collateral to the proof of those issues.[*]  See id.

In a negligence action, evidence of habitual conduct is inadmissible to prove conduct at the time of the incident complained of because such evidence is collateral to the issues at trial.  Thus, the evidence in question before us was inadmissible because it was collateral to the issues whether this decedent complained of chest pains after her stress test, whether the defendant was negligent in treating this patient at the time of the incident complained of, and whether the alleged acts of negligence were a proximate cause of the decedent's death.  See Cherry, 252 Va. at 244, 475 S.E.2d at 796; Jackson, 179 Va. at 648, 20 S.E.2d at 492.

Acceptance of the contrary position urged by the defendant would result in the admission of irrelevant evidence in a variety of actions.  For example, a defendant in an automobile

---

[*]We also note that Graham v. Commonwealth, 127 Va. 808, 103 S.E. 565 (1920), cited by the defendant, is inapposite to the present case.  There, we held that since the defendant on trial for murder had asserted a self-defense claim, alleging that the deceased had used violent, profane language and advanced toward him with a gun, the Commonwealth was entitled to introduce rebuttal evidence that the deceased did not have a habit of swearing.  127 Va. at 824, 103 S.E. at 570.  We stated that this evidence was admissible under the same principle that allows the admission of character evidence.  Id.  Thus, our holding in Graham was limited to the use of a narrow category of rebuttal testimony to a claim of self-defense in a criminal prosecution, and is unrelated to the present issue of the admissibility of habit evidence in a negligence action.

9

negligence action would be permitted to prove that he obeyed a certain traffic signal at an accident scene by testifying that he complies with that signal on a daily basis when driving at that location. We decline to adopt such a rule because the relevant inquiry in a negligence action is not whether a defendant has a habit of compliance with the type of duty at issue, but whether the defendant breached a specific duty owed to the plaintiff at a particular time.

By our holding in this case, we also decline the defendant's request that we follow the decisions of other jurisdictions that permit evidence of the habitual conduct of medical personnel for the purpose of proving that the defendant's conduct on a specific occasion conformed to their routine practice. See, e.g., Bloskas v. Murray, 646 P.2d 907, 911 (Colo. 1982); Crawford v. Fayez, 435 S.E.2d 545, 549-50 (N.C.App. 1993). Those decisions represent a departure from our jurisprudence, and we perceive no benefit from the admission of such evidence to warrant a reversal or curtailment of the basic principles articulated in Jackson.

We also disagree with the defendant's contention that admission of this type of evidence is necessary to counter a plaintiff's expert testimony on the applicable standard of care, which is based partly on actions taken by other health care providers under the same circumstances. Both factual and expert

testimony in a medical negligence action must be relevant to the incident at issue. The testimony of fact witnesses is relevant to show what actually happened on a particular occasion. The testimony of expert witnesses relates to the same specific incident by establishing a standard of care applicable to the defendant's actions on that particular occasion and by assessing whether those actions conformed to the established standard of care. In contrast, the evidence improperly admitted by the trial court was relevant only to prove events that occurred on other occasions.

For these reasons, we will reverse the trial court's judgment and remand the case for a new trial in accordance with the principles expressed in this opinion.

<u>Reversed and remanded.</u>

JUSTICE KINSER, concurring.

I concur in the result reached by the majority but for different reasons. In prior cases, this Court has not clearly articulated a distinction between "general" and "specific" habit evidence, or discussed whether different rules apply when determining the admissibility of each type of habit evidence. However, we have, on occasions, upheld the admissibility of "specific" habit evidence. <u>See</u> <u>Washington, A. and Mt. V. Ry.</u>

11

Co. v. Trimyer, 110 Va. 856, 67 S.E. 531 (1910); Alexandria & F.R. Co. v. Herndon, 87 Va. 193, 12 S.E. 289 (1890).

The majority states that this Court's reasoning in Jackson v. Chesapeake & Ohio Ry. Co., 179 Va. 642, 20 S.E.2d 489 (1942), represented a departure from the decisions in Trimyer and Herndon. But in Jackson, we concluded that the facts of that case did "not bring it within any of the exceptions to the general rule" that evidence of an individual's general habits is not admissible for the purpose of establishing that individual's conduct on a specific occasion. Id. at 649, 20 S.E.2d at 492. I believe this Court's decisions in Trimyer, Herndon, Norfolk & W. Ry. Co. v. Thomas, 110 Va. 622, 66 S.E. 817 (1910), and Kimball v. Borden, 95 Va. 203, 28 S.E. 207 (1897), all of which were discussed in Jackson, represent the "exceptions to the general rule." Jackson, 179 Va. at 649, 20 S.E.2d at 492. Thus, I do not agree that the decision in Jackson signified a shift from the Court's earlier rulings. Rather, Jackson re-stated the rule regarding "general" habit evidence. Id. It did not overrule Trimyer or Herndon, nor does the majority decision today do so.

Additionally, the more recent case of Cherry v. D.S. Nash Constr. Co., 252 Va. 241, 475 S.E.2d 794 (1996), involved only "general" habit evidence although the Court did not classify the challenged evidence as "general" or "specific." Instead, the

12

Court merely concluded that "Nash Construction's overall performance record, as well as the fact that it had not been cited . . . for safety violations on the job, had no probative value regarding" what action Nash Construction took or should have taken on the day of the accident. Id. at 245, 475 S.E.2d at 797.

Regardless of the status of the Commonwealth's jurisprudence regarding "specific" and "general" habit evidence and the import of the decision in Jackson, I believe that the trial court erred by admitting the evidence at issue in this appeal because the defendants did not establish a proper foundation. According to the testimony of Dr. Girish Purohit, Debora S. Hurt, and Courtney Gates, they occasionally had patients who experienced chest pain after completing all the cardiac tests and changing into their own clothes. However, Dr. Purohit, Hurt, and Gates admitted that such occurrences were infrequent. In other words, episodes, like the one allegedly experienced by Pearl V. Vaughan, were not numerous or regular events. Thus, I conclude that the defendants failed to prove a routine practice or procedure regularly utilized in response to a repeated specific situation from which an inference of habitual conduct could be drawn.

For these reasons, I respectfully concur.

13

JUSTICE LACY, dissenting.

Until today, Virginia, like virtually all other jurisdictions, recognized a distinction between evidence of one's general habits and evidence of one's specific habits and considered specific habit evidence relevant and admissible under certain conditions. 1 McCormick on Evidence § 195 (John William Strong ed., 4th ed. 1992); 1A Wigmore, Evidence § 93 (Tillers rev. 1983). Compare Cherry v. D.S. Nash Construction Co., 252 Va. 241, 475 S.E.2d 794 (1996), with Jackson v. Chesapeake & Ohio Ry. Co., 179 Va. 642, 20 S.E.2d 489 (1942), Graham v. Commonwealth, 127 Va. 808, 103 S.E. 965 (1920), Washington, A. and Mt. V. Ry. Co. v. Trimyer, 110 Va. 856, 67 S.E. 531 (1910), and Alexandria & F.R.R. Co. v. Herndon, 87 Va. 193, 12 S.E. 289 (1890).

Following existing Virginia precedent, the trial court in this case determined that the evidence at issue was specific habit evidence and considered its admissibility on that basis. In reversing the trial court, the majority recites the rule applicable to general habit evidence, and applies it to the facts of this case. Because I believe the trial court analyzed the evidence correctly and in accordance with our prior cases in ruling on its admissibility, I respectfully dissent.

Evidence of general habits, such as evidence that a person generally is a careful driver offered to show that he did not

14

act negligently at the time in question, regardless of any probative value it may have, has been held inadmissible per se. Thus, in Jackson, we said:

> [A]ccording to the weight of authority, evidence of the general habits of a person is not admissible for the purpose of showing the nature of his conduct upon a specific occasion. Accordingly, in actions for negligence the courts generally deny the admissibility of evidence of the reputation of the defendant for negligence, his habits of negligence, his habitual negligent conduct, etc., upon the issue of his negligence at the time of the injury complained of.

179 Va. at 649, 20 S.E.2d at 492; see also Cherry, 252 Va. at 244, 475 S.E.2d at 796.

However, this blanket rejection of general habit evidence has not been extended to evidence of specific habitual conduct, that is, evidence that a person regularly reacts to a specific set of circumstances in the same manner. We concluded long ago that such specific habit evidence is probative of, and thus relevant to, such person's actions on a particular occasion under similar circumstances. "Of the probative value of a present habit, or custom, as showing the doing on a specific occasion of the act which is the subject of the habit or custom, there can be no doubt." Graham, 127 Va. at 823, 103 S.E. at 570 (emphasis added). Such evidence is not automatically admissible under the prior cases decided by this Court, but neither is it automatically inadmissible under those cases or under the rule

15

recited in Jackson.  Rather, as Jackson pointedly observed, "[t]he admissibility, as well as the probative value, of this class of [specific habit] evidence depends in a large measure upon the circumstances in which it is offered."  Jackson, 179 Va. at 647, 20 S.E. at 491.

Thus, this Court has affirmed the admission of evidence showing that the railroad company's trains had habitually stopped at a particular place on arriving at the station because such evidence "did tend to prove" whether the train was stopped or in motion at the place plaintiff was injured.  Herndon, 87 Va. at 199, 12 S.E. at 290.  Likewise, testimony that a train did not stop at an intersection on other prior occasions tended to prove that it did not do so on the day of the accident in issue, and was thus properly admitted.  Trimyer, 110 Va. at 858-59, 67 S.E. at 532-33.

The evidence at issue in this case was the habit of recording complaints of chest pains in a patient's record and re-evaluating the patient in response to the patient's complaint of chest pains following the completion of a stress test.  The appellee argued that the evidence was not evidence of general habits and was not offered to show a general disposition toward non-negligent acts.  According to the appellee, "[w]hile the challenged evidence admittedly has a bearing on the question whether Dr. Purohit was negligent, the primary purpose for which

16

it was offered was to prove that the event (the alleged complaints of chest pain after the Persantine Stress Test had ended) upon which the plaintiff relies as giving rise to the duty to re-evaluate and hospitalize Mrs. Vaughan did not occur, . . . ."

The trial court agreed with the appellee, stating that the evidence was not general habit evidence offered for the purpose of showing that the defendants "conducted themselves in a safe and careful manner," but evidence "of a specific response to a particular factual situation."  Before admitting the evidence, the trial court further required that the evidence offered meet the test of regularity, that is, in the words of the trial court, that the actions were "numerous enough to base an inference of systematic conduct or . . . regular response to a repeated specific situation."

The admissibility of evidence is within the discretion of the trial court.  Roll 'R' Way Rinks, Inc. v. Smith, 218 Va. 321, 326, 237 S.E.2d 157, 161 (1977).  The evidence in this case was specific, not general, habit evidence; it was relevant to and probative of a fact in issue — whether the patient complained of chest pains following the stress test; there was no assertion that admission of the evidence would unduly lengthen the trial or confuse the jury.  There is nothing in this record to support a finding by this Court that the trial

court abused its discretion in admitting this evidence in this case. Accordingly, I find no basis to reverse the judgment of the trial court.

In reversing the trial court, the majority relies heavily on the _Jackson_ case, a negligence action against a railroad company for injuries suffered when a train hit a vehicle occupied by the plaintiff at a railroad crossing. The decision in _Jackson_ was not based on a finding that the proffered evidence was inadmissible habit evidence, but rather that the evidence was inadmissible _impeachment_ evidence, the ground asserted by the plaintiff in his objection to the trial court's ruling. 179 Va. at 650-51, 20 S.E.2d at 492-93. As such, the Court's discussion of habit evidence in _Jackson_, which the majority finds so persuasive, is merely _dicta_. Nevertheless, because I believe the majority misinterprets the _dicta_ in _Jackson_, a full discussion of the case is warranted.

An issue described by the Court in _Jackson_ as "vital" to establishing the railroad's negligence in that case was whether the railroad crossing signals required by statute were given on the day of the accident. The statutory signal requirements were "two sharp sounds of the whistle and a continuous ringing of the bell, or the whistle sounded continuously or alternatively with the bell from a point at least 300 yards, and not more than 600 yards, from the crossing." _Id._ at 645, 20 S.E.2d at 490. The

failure to give a proper signal constituted negligence per se. Thirty-four eyewitnesses testified on this issue, the majority of which testified that the crossing signals were given. Id.

The evidence in dispute was offered by the plaintiff and consisted of notations made by a person stationed at a nearby business regarding the crossing signals given on seven days seven months after the accident. The notations were that "different crossing signals were given;" "the whistle was blown on each day mentioned" but that "the number of blasts varied," and that the bell was not rung on any of the days. Id. at 646, 20 S.E.2d at 489. The trial court refused to admit this evidence.

On appeal, the Court in Jackson, as noted above, acknowledged the rule against the admission of general habit evidence but also acknowledged that the rule did not apply to all habit evidence, citing other Virginia cases in which habit evidence was admitted. Id. at 647, 20 S.E.2d at 491. The Court in Jackson, like the majority here, did not specifically classify the proffered evidence as evidence of general or specific habit. However, the Jackson Court did not reject the proffered specific evidence under the rule that evidence of general habits is inadmissible per se as the majority states. This much is clear from the fact that the court engaged in a lengthy analysis of the reliability, relevancy, and prejudicial

19

effect of the proffered evidence, which analysis would have been unnecessary for application of a per se rule against admissibility.

Recognizing that proffered specific habit evidence "may not in fact have sufficient regularity to make it probable that it would be carried out in every instance . . . ," and that "[w]hether or not such sufficient regularity exists must depend largely on the circumstances of each case," 179 Va. at 650, 20 S.E.2d at 492 (emphasis added)(citing Wigmore), the Court in Jackson affirmed the trial court's refusal to admit the plaintiff's proffered evidence, reasoning that the evidence offered involved incidents "too remote in time and too indefinite in substance to be relevant to the question, . . . ." Id.

The Court's conclusion in Jackson that the proffered habit evidence in that case did not qualify as admissible specific habit evidence did not represent a departure from previous cases. The proffered evidence in Jackson differed significantly in quality from the specific habit evidence admitted in previous cases. See Trimyer, 110 Va. 856, 67 S.E. 531; Herndon, 87 Va. 193, 12 S.E. 289. The purportedly habitual act at issue in Jackson — giving the signal crossings in the manner required by statute — was not a simple, single act. It included alternative formulas for sounding the signals which had to be performed at

certain distances.  The proffered evidence only established that different crossing signals were given, some of which may have been in compliance with the statutory requirements, such as the continuing blast of the signal.  Also in contrast to prior cases, the evidence offered pertained solely to actions after the accident, rather than prior to the accident, and consisted of only seven occasions.  Under these circumstances, it is not surprising that the proffered evidence of a specific habit was determined to be inadmissible.  The reasons stated by the Court in Jackson for rejecting the evidence at issue in that case reflected the analysis which must be applied by a trial court each time a party seeks to introduce evidence of a specific habit.

As indicated above, the trial court in the instant case engaged in just such an analysis and concluded that the evidence was relevant and admissible and unlikely to cause prejudice or undue delay.  The majority concludes that this evidence offered and admitted by the trial court was inadmissible because it was evidence of "collateral" matters.  This conclusion rests on a legal principle announced by the majority that, "evidence of habitual conduct is inadmissible because it consists only of collateral facts, from which no fair inferences can be drawn, and tends to mislead the jury and to divert its attention from the issues before the court."

The majority cites three cases for support of this principle:  Jackson, Cherry, 252 Va. at 244-45, 475 S.E.2d at 796; and Spurlin v. Richardson, 203 Va. 984, 990, 128 S.E.2d 273, 278 (1962).  However, of these cases only Jackson involves any discussion of specific habit evidence, and the referenced passage in each case is nothing more than a recitation of the unremarkable proposition that irrelevant, collateral evidence is inadmissible.  In fact, all three cases refer to Moore v. City of Richmond, 85 Va. 538, 539, 8 S.E. 387, 388 (1888), as the source of the statement.  "It is an elementary rule that the evidence must be confined to the point in issue, and hence evidence of collateral facts, from which no fair inferences may be drawn tending to throw light upon the fact under investigation, is excluded."  Id.  Moore did not involve habit evidence at all, but rather involved evidence offered by the plaintiff "for the purpose of proving the defective condition of the sidewalk at the place where the accident occurred" that another person "on the same night, fell into the same hole" as plaintiff.  Id.  Therefore, I believe the majority has misinterpreted Jackson, as well as Cherry and Spurlin, as support for a legal principle that all habit evidence is evidence of collateral facts.  While the legal principle enunciated by the majority may arguably be valid with regard to

22

general habit evidence, its applicability to evidence of specific habits must be determined on a case by case basis.

Of equal concern to me is the majority's statement that the disputed evidence in this case was "collateral to the issue of [the defendants'] conduct and the decedent's condition at the time of the incident in question" and, therefore, was not relevant to "the issues at trial, namely, whether this decedent complained of chest pains after her stress test." This conclusion ignores a crucial factual issue in this case — whether the plaintiff complained of chest pains following the stress test.

The evidence of the defendant's habit of recording chest pain complaints and re-evaluating the patient whenever a patient complains of chest pain tends to show that they would have done the same had decedent complained of chest pain at the time in question. This evidence, combined with the fact that decedent's records reveal no chest-pain complaints or re-evaluation, tends to prove that decedent did not, in fact, complain of chest pain. The disputed evidence is thus demonstrably probative of a crucial factual issue in the trial; it simply is not collateral to "the issues at trial." See Herndon, 87 Va. at 199, 12 S.E. at 291 ("It is a settled rule of evidence that, whatever tends to prove the issue, or constitutes a link in the chain of proof, is relevant and admissible.")

Finally, the majority's conclusion that the evidence at issue is inadmissible is not supported by any discussion of why no reasonable inferences can be drawn from the evidence, why the evidence misleads and diverts the attention of the jury in this case, or how this evidence differs from the specific habit evidence directly addressed and held admissible in Trimyer and Herndon, cases which have not been overruled and which were specifically acknowledged by this Court in Jackson.

I recognize the majority's valid concern that this type of evidence poses the danger of confusing the jury and causing mini-trials. However, that danger is greater in some cases than in others and is non-existent in still other cases. Thus, the trial court must consider this danger, in relation to the probative value of the proffered evidence, in determining whether to admit specific habit evidence in any particular case — the type of determination made daily by trial courts in ruling on the admission of evidence. Because I believe the trial court made this determination correctly in this case, I would affirm.

24